McCALEB, Justice.
Emery R. Moore died in the Republic of Cuba on June 30, 1952, leaving community property in the State of Louisiana of an approximate value of $40,000. By last will, he bequeathed all of his effects to his surviving spouse, Mrs. Joy Carruth Moore, naming her testamentary executrix of his estate which was opened and administered in the Civil District Court for the Parish of Orleans.
When Mrs. Moore, the executrix, filed her final account, it was opposed by Louis Penton and John T. LeSueur, a nephew of the decedent, each alleging that the succession was indebted to him, in the sum of $2,310 and $7,787.42 respectively, for services rendered in connection with a hog raising venture in which they and the deceased had been engaged on a farm owned by the latter in Bush, St. Tammany Parish, Louisiana.
Penton claims that he was verbally employed on July 1, 1950 by Mr. Moore to perform labor on the farm; that he was promised a one-third share in the profit realized from the operations; that decedent agreed “that he would take care of him” even though the venture was not successful and that, therefore, he should be paid for his labor at $5 per day from July 1, 1950 to September 1, 1952.
LeSueuPs demand is composed of the following items: (1) personal services rendered as overseer of the hog farm from September 1, 1950 to September 1, 1952 at the rate of $10 per day; (2) rent due by Mr. Moore for use of the adjacent farm owned by LeSueur for 27 months (June 1-September 1, 1952) at $50 per month; (3) $500 commission allegedly earned by him as a real estate agent on the sale of the farm to Mr. Moore [1] and (4) $317 for miscellaneous expenses incurred by him during the operation of the farm.
The salient facts of the case are as follows: At the time of his death and for many years prior thereto the decedent, Emery R. Moore, was employed in an executive capacity by a large sugar refinery in the Republic of Cuba and lived there for ten months of each year. During July of 1950, his nephew, John T. LeSueur, who is *251 ,a real estate agent, interested him in a 77 acre farm in St. Tammany Parish which adjoins a 31 acre farm owned by LeSueur. •On July 12, 1950, Moore purchased the farm for $5,000. At that time, Penton, a farm laborer, was working for LeSueur on his 31 acre farm and occupied a small house situated thereon for a yearly rental •of $50. Following Moore’s acquisition, it was verbally agreed that, since he resided in Cuba for most of the year, LeSueur was to •operate the place as a hog farm with the assistance of Penton; that Moore was to •advance the funds for the operations; that LeSueur was to have occupancy of Moore’s house on the farm during his absence, as well as the use of all farm machinery owned by Moore; that Penton was to have free access to all farm utensils for the operations •conducted by him on LeSueur’s place and that each of the parties was to receive one-third of any profits realized from the venture.
LeSueur and Penton, in their testimony, .admit that this was substantially the agreement and that the venture was unprofitable. However, they assert that it was contemplated that they were to be paid, and that Moore had promised on numerous occasions to pay them, for their endeavors, notwithstanding that the results of the operation were not fruitful.
The executrix, on the other hand, denies any such promise or agreement on the part •of her late husband, maintaining that the arrangement was entirely a profit sharing affair in which decedent furnished the farm, the hogs and the machinery for the operation, and the claimants merely their labor.
In proof of their claim, opponents produced several witnesses to fortify their own testimony. Examination of their evidence shows that a majority of them were unable to state anything definite about the alleged arrangement between the parties. A few of them nevertheless attributed vague and general statements to Mr. Moore to the effect that he was going to take care of LeSueur and that the farm woqld belong to him. Mrs. LeSueur, opponent’s mother and sister of the decedent, while not alluding to any profit sharing arrangement, said that Moore intended to settle with Penton and her son for their labor “as soon as he got back from Cuba” and that he intended to give the place to her son.
Opposed to this is the testimony of the executrix and her sister, Udell Carruth, who say that they were familiar with the arrangement between Mr. Moore and LeSueur and were present on numerous occasions when the farm operations were being discussed; that LeSueur agreed to take care of the property while Mr. Moore was in Cuba; that he was to have the use of the farm, machinery and implements, occupy the house (in which he placed his own furniture) without paying rent therefor and that, if there were any profits derived from the hog raising venture, they were to be *253 divided between Moore, LeSueur and Pen-ton.
In addition to this, Mr. Louis Generes, an accountant who prepared income tax returns for Mr. Moore, testified that decedent was taking the full loss from the operations on the property as a deduction from his gross income; that no deductions were included for salaries or labor and that it was his understanding that LeSueur was to share only in the profits of the farm.
After hearing the evidence, the district judge found for the executrix and dismissed the oppositions.
 Opponents are contending on this appeal that the judge committed manifest error in not giving recognition to their' claims. We do not think so. Indeed, after a perusal of the record, we entertain no doubt that the judge’s appreciation of the evidence was eminently correct. It would be superfluous for us to engage in a detailed analysis of the testimony of the opponents and that of their witnesses, who attempt to give credence to their position. Suffice it to say that these sort of postmortem claims are to be received with great caution, Iennusa v. Rosato, 207 La. 999, 22 So.2d 467, for their proof is dependent upon testimony of oral commitments and promises made by a deceased person, which is regarded by the courts as the weakest kind of evidence and subject to the closest scrutiny. Bodenheimer v. Executors of Bodenheimer, 35 La.Ann. 1005; Bringier v. Gordon, 14 La.Ann. 274; Lea v. Polk County Copper Co., 21 How. 493, 16 L.Ed. 203 and Foscue v. Mitchell, 190 La. 758, 182 So. 740. Accordingly, such testimony cannot serve as a basis for a judgment of recovery unless corroborated by strong and believable circumstances. Cutler v. Succession of Collins, 37 La.Ann. 95 and Succession of McBurney, 162 La. 758, 111 So. 86.
The quality of the proof tendered in this case does not meet these requirements.
The judgment is affirmed.
HAWTHORNE, J., absent.

. When the inventory of decedent’s property in St. Tammany Parish was being taken, LeSueur told the notary and the witnesses to the inventory not to include a $1,200 truck therein because his uncle had given him the truck in lieu of his commission on the purchase of the farm.