976 So.2d 209 (2008)
SUCCESSION OF JOSE E. VAZQUEZ.
No. 2007-CA-0816.
Court of Appeal of Louisiana, Fourth Circuit.
January 16, 2008.
*212 Maria I. O'Byrne Stephenson, Lisa C. Matthews, Catherine I. Chavarri, Kathleen D. Lambert, New Orleans, LA, for Jose E. Vasquez.
Cameron C. Gamble, Cameron C. Gamble, A PLC, J. Kendall Rathburn, Mollere, Flanagan & Landry, Metairie, LA, for Kimberly Vasquez and Letcia Rodriguez, as Natural Tutrix of the Minor, Veronica Vasquez.
(Court composed of Judge PATRICIA RIVET MURRAY, Judge MAX N. TOBIAS JR., Judge DAVID S. GORBATY).
DAVID S. GORBATY, Judge.
In this appeal, appellant Jose E. Vazquez avers that the trial court erroneously allocated the ownership and liability interests of the Succession of Jose A. Vazquez. For the reasons set forth below, we affirm in part and reverse in part.

FACTS AND PROCEDURAL HISTORY
Jose A. Vazquez died testate on July 11, 2003, leaving a surviving spouse, Kimberly Share Vazquez, and a natural minor child, Veronica Aurora Vazquez. Decedent's will contained a testamentary trust, with decedent's father, Jose E. Vazquez, as executor and trustee, and to which all of the succession assets were to be transferred, with the exception of a $15,000 bequest to his widow, Kimberly. The will was probated and Jose E. Vazquez was qualified as executor. The trust was never funded or established.
Three years later, a hearing was held to determine the executor's competency, and on September 19, 2006, the court discharged Jose E. Vazquez from his fiduciary position as executor of the succession and trustee of the trust. Thereafter, a motion, for execution of a June 27, 2006 consent judgment and distribution of the succession and trust was heard. In March 2007, the trial court issued its notice of judgment disbursing the assets and assigning liability for the debts of the succession. Appellant has filed this appeal from specific portions of that judgment.
DISCUSSION
The succession assets include the ownership of several corporations, including Vazquez Seafood Restaurant, Inc., Ideal Homes, Inc., and Lady L. Towing, Inc. These businesses were never conducted as corporations. They were operated by Jose E. Vazquez, appellant, and his son, decedent, Jose A. Vazquez, as sole proprietorships or joint ventures.
*213 Appellant avers that the trial court erred in charging him personally with the pre-storm value of the bobcats and trailers.
This construction equipment belonged to and was being used by Ideal Homes prior to decedent's death. As part of the assets of Ideal Homes, it formed a part of the assets of the estate and was listed in the Preliminary Descriptive List and valued at $43,000. This equipment was either destroyed by Hurricane Katrina or stolen after Hurricane Katrina. Appellant states that these items were insured, and the insurance lapsed, but the decedent had not renewed the insurance at the time of his death. After decedent's death, appellant "never tried" to obtain insurance on the machines.
The executor is liable for any loss resulting from his failure to preserve and maintain the property of the succession. "A succession representative is a fiduciary with respect to the succession, and shall have the duty of collecting, preserving, and managing the property of the succession in accordance with law. He shall act at all times as a prudent administrator, and shall be personally responsible for all damages resulting from his failure to so act." La. C.C.P. art. 3191.
The executor should have protected the value of the bobcats and trailers by obtaining insurance. He failed to do so, and is now responsible for its value to the estate. This assignment of error has no merit.
Next, appellant argues that the trial court should have assessed the value of the "Creole Lynn" boat at $28,000. Appellees have no objection to this valuation. Therefore, this court reverses that portion of the judgment, and assesses the value of the Creole Lynn at $28,000.
Appellant further contends that the trial court should have deducted the $5,000 commission paid to the broker for the sale of the Creole Lynn from the assessed sale price or added the $5,000 to the liabilities owed.
There was no concrete evidence presented as to the commission paid on the sale of the boat. Appellant was the only witness to the transaction, and did not deposit any of the proceeds of the sale into the account of the succession. Since the commission amount was not proven, we find this assignment of error to be meritless.
Next, appellant argues that the trial court should have held that the Creole Lynn was owned half by the succession and half by Jose E. Vazquez.
This item was listed in the Preliminary Descriptive List (referred to as "Lady L") filed by the executor, as owned one-half by the succession with a value of $29,000. The Descriptive List shows loans for $30,000 and $8,000 against this asset. Appellant testified that the loan for $30,000 was made by him, personally, to decedent; and the $8,000 loan was made by Vazquez Seafood Restaurant to decedent, personally. However, there is no evidence other than appellant's testimony as to these loans. Proof of claims against estates are dependent upon testimony of oral commitments and promises of a deceased person, which is regarded by the courts as the weakest kind of evidence and subject to the closest scrutiny. Succession of Moore, 225 La. 248, 72 So.2d 494 (1954). Such testimony cannot serve as a basis for recovery unless corroborated by strong and believable circumstances. Succession of McBurney, 162 La. 758, 111 So. 86 (1926).
La. R.S. 13:3721 provides:
Parol evidence shall not be received to prove any debt or liability of a deceased person against his succession representative, heirs, or legatees when no suit to *214 enforce it has been brought against the deceased prior to his death, unless within one year of the death of the deceased:
(1) A suit to enforce the debt or liability is brought against the succession representative, heirs, or legatees of the deceased;
(2) The debt or liability is acknowledged by the succession representative as provided by Article 3242 of the Code of Civil Procedure, or his placing it on a tableau of distribution, or petitioning for authority to pay it;
(3) The claimant has submitted to the succession representative a formal proof of his claim against the succession, as provided in Article 3245 of the Code of Civil Procedure.
The provisions of this section cannot be waived impliedly through the failure of a litigant to object to the admission of evidence which is inadmissible thereunder.
None of these circumstances have been met; as such, appellant's testimony is inadmissible. The boat was sold by the executor after decedent's death, and the monies have not been accounted for. As such, the total amount of the sale price of $28,000 should be included in the estate account, and paid by and charged against the executor's assets.
Appellant also states that the trial court should have granted him a management fee of $72,000 from Ideal Homes, Inc. Appellant transferred $72,000 from the Ideal Homes, Inc. bank account to his personal account. He states he is entitled to this money as a management fee for his services in selling the property of Ideal Homes after decedent's death.
The executor shall preserve the property of the succession. La. C.C.P. art. 3221. Further, the executor may pay an estate debt only with the authorization of the court, except as provided by La. C.C.P. art. 3224 and 3302. La. C.C.P. art. 3224 provides that the court may authorize the continuation of a business of the deceased for the benefit of the succession, after the executor has complied with La. C.C.P. art. 3229, which requires the publication of notice of the application to the court for an order to continue business. There is no legal authority for the executor to charge the estate for fees or compensation without court order. The payments of debts or charges against the estate can only be authorized by the court.
Further, the co-owner of a business in a succession, whether he is the executor of the succession or otherwise, is not legally entitled to receive or charge any fees or payment from or to the other co-owner (in this case, the succession) for managing the business in which the executor is a co-owner, without a special contract or agreement and court approval. Succession of Rosenthal, 369 So.2d 166 (La.App. 4 Cir. 1979); Beavers v. Stephens, 341 So.2d 1278 (La.App. 3 Cir.1977); Conrad v. Burbank, 25 La.Ann. 112 (La.1873). Finally, there is no documentary evidence of any services provided by the executor, and the heirs had no opportunity to question or contest the authority of the claimant to incur such an obligation on behalf of the succession. As such, we hold that this assignment of error is meritless.
Next, appellant argues that the trial court should have awarded him $18,000 and assessed a liability against the Succession for $18,000 as payment for his work and effort in cleaning and gutting properties owned and co-owned by the Succession.
Jose E. Vazquez withdrew $18,000 from the Ideal Homes bank account and paid himself for the gutting of the estate property on Venus Street and the property at 5339 Franklin Avenue. As discussed *215 above, this fee is not properly payable. The executor had no authority to withdraw those funds from the monies of the succession. Furthermore, Jose E. Vazques is a co-owner of the aforementioned properties, and as such, is not entitled to compensation for services rendered on behalf of preserving and maintaining the property. Succession of Rosenthal, supra; Beavers v. Stephens, supra.
Appellant claims he gutted the properties himself and has no receipts for paid labor. He states he obtained estimates for the work but did it himself to save money, but has no proof of estimates from independent contractors or laborers. He has submitted no work or time sheets, no material costs, and no witnesses. This amount was properly charged back against the executor. This assignment of error has no merit.
Appellant further contends that the trial court should have awarded him an executor fee of two and a half percent of the assets, to be deducted from the Succession.
A succession representative has no absolute right to the executor's fee provided for in La. C.C.P. art. 3351 until he has completed the administration of the succession and has filed his final account. Succession of Marcour, 173 So. 587 (La. App.1937). Where the executor is guilty of gross negligence in handling the succession, he is not entitled to a commission. Succession of Liles, 24 La. Ann. 490 (1872); Succession of Touzanne, 36 La. Ann. 420 (1884).
The trial court disallowed the claim for the executor's fee, stating that appellant had been discharged as executor "for violating his position and failing to properly perform and he never rightfully assumed the position of trustee. He is not entitled to a fee for failing to perform his duties as executor." We defer to the trial court's ruling on this factual finding of malfeasance and deem it to be supported by the evidence. This assignment of error is meritless.
Appellant also avers that the trial court should have awarded him a reimbursement from the Succession for his costs as executor of the Succession. Copies of checks totaling $7,554.40 representing expenses paid by appellant on behalf of the succession were presented to the court.
The trial court did not address this issue in its judgment. We find that the amount of $7,554.40 should be added to the succession's liabilities. This assignment of error has merit.
Additionally, appellant contends that the trial court should have charged the attorney's fees of the attorney of the executor, Marc Powell, against the Succession. Appellant further argues that the trial court should have charged the attorney's fees of the attorney of the trustee, Maria I. O'Byrne Stephenson, against the Succession.
Attorney's fees incurred by attorneys and executors in defending their performance against objections brought by heirs to succession were not chargeable as expenses to the succession, where costs incurred by the attorney and administrator benefited themselves and not the heirs or testator. Succession of Hirt, 612 So.2d 1054 (La.App. 4 Cir.1993). Where legal representation is primarily for the personal benefit of the executor and not performed exclusively for the benefit of the estate, the attorney's fees may not be paid from the succession. Succession of Menendez, 160 So.2d 827 (La.App. 4 Cir.1964); Succession of Haydel, 606 So.2d 42 (La. App. 4 Cir.1992). If the executor has individual and special interests that he contests or defends, the succession is not responsible for the legal costs involved. Succession of Menendez, supra.
*216 The trial court disallowed these fees and costs, stating that the executor had been discharged from his duties for malfeasance. The court further found that "[h]e is no more than a co-owner claimant in these proceedings, and, as a litigant, is not legally entitled to attorney fees or expenses." We find that this ruling is not erroneous. Under these particular circumstances where malfeasance has been found, and the executor has been removed, it would be illogical to pay the executor's attorney's fees from the heirs' estate.
Finally, appellant avers that the trial court should have awarded Vazquez Enterprises, Inc. a reimbursement for monies advanced Ideal Homes, Inc. in the amount of $287,439.59.
The trial court disallowed this claim, holding, "The debt, if any, is prescribed by three-year prescription or, alternatively, any debt was not proved by credible, admissible evidence." All of the alleged debts are prescribed by the three-year prescription for an action on money lent or on an open account, pursuant to La. C.C. art. 3494. The prescription commences to run from the day payment is exigible. La. C.C. art. 3495. There was no allegation of an interruption of prescription by acknowledgement, or any other means. As discussed above, the Civil Code prohibits the introduction of parol evidence to prove any acknowledgment or promise of a deceased party to pay any debt or liability, in order to take such debt or liability out of prescription, or to revive it after prescription has run or been completed. Sims v. Fogg, 183 So.2d 678 (La. App. 1 Cir.1966).
The amount of this claim is the total amount of approximately one hundred sixty checks written on the checking account of Vazquez Enterprises, Inc. between 1994 and 1997. The checks are signed by decedent and payable to various payees, both individuals and companies. Jose E. Vazquez said the decedent had authority to write checks on the business account. Neither the witness, Wally Mazur, nor appellant could identify the payees or what the checks were for. Most of the checks were to third parties or cash. Most were written by Jose A. Vazquez with the general permission of Jose E. Vazquez for him to write checks on the particular account. Jose E. Vazquez had no personal, independent knowledge of what the checks were for or to whom they were written. This is not credible evidence of a debt of the decedent. The trial court did not err. This assignment of error has no merit.
CONCLUSION
Accordingly, for the foregoing reasons, the judgment of the trial court is affirmed in part and reversed in part.
AFFIRMED IN PART; REVERSED IN PART.