TERRI F. LOVE, Judge.
 

 | ,This appeal arises from a dispute regarding the actions of an executrix and an attorney for the executrix of a succession. The trial court found that the attorney for the succession charged $24,500 in excessive fees and ordered repayment. The trial court also dismissed a reconventional demand filed by the executrix seeking her commission. We find that the trial court did not err in finding that the attorney charged excessive fees after weighing conflicting testimony and affirm. We also find that the trial court correctly dismissed the executrix’s reconventional demand due to its finding that the executrix “acted imprudently regarding certain succession property” and affirm.
 

 FACTUAL BACKGROUND AND PROCEDURAL HISTORY
 

 Marguerite Scifo Graff (“Decedent”) died on August 27, 2006. The Decedent’s last will and testament appointed Kenneth
 
 *519
 
 Ward as the attorney for the Succession and the executrix, and appointed his wife, Rosemary E. Ward (collectively referred to as the ‘Wards”), as the executrix of the Succession. Mr. Ward filed pleadings to open the Succession in the Twenty-Fourth Judicial District for the Parish of Jefferson (“24th JDC”). The sworn descriptive list (“List”) documented $809,682.13 in cash assets, but failed to include immovable property 12the Decedent co-owned with one of her grand-nephews and thirty-five bags of jewelry in Mrs. Ward’s possession. Mr. Ward took no action to pay the mortgage on the immovable property and it was foreclosed upon.
 

 Mr. Ward filed a judgment of possession, which awarded $126,946 to each of the residuary legatees, Selena Scifo For-nerette and Randy Scifo (collectively referred to as the “Residuary Legatees”). However, Mr. Ward later filed an amended judgment of possession, which sought to withhold the money from the Residuary Legatees, and alleged that the Succession may become liable to Countrywide Home Loans, Inc. in the foreclosure proceedings. Then, Mrs. Ward, as the executrix of the Succession, petitioned for permission to pay Mr. Ward an additional $37,000 in attorney’s fees
 
 [1]
 
 for over 150 hours of alleged work on the Succession. After Mr. Ward was awarded payment, the Residuary Legatees filed a motion to remove executrix and for accounting.
 
 [2]
 
 Mrs. Ward was removed
 
 [3]
 
 and Ms. Fornerette was appointed as the new executrix, whereupon she fired Mr. Ward.
 

 The Residuary Legatees then filed a petition for damages in Orleans Parish against the Wards alleging that Mr. Ward’s actions fell below the standard of care of attorneys practicing in the community. The petition also alleged that Mrs. Ward paid excessive legal fees to the Succession attorney and breached her duty to the heirs and legatees to the Decedent’s estate. The Wards filed an exception of [.-¡prematurity because no action for a deficiency judgment was filed. The Wards filed an answer, which included a recon-ventional demand by Mrs. Ward seeking the payment of an executrix commission. Following a trial, the trial court awarded the Residuary Legatees a judgment of $24,500, plus interest from the date of judicial demand. The trial court also found that Mrs. Ward “acted imprudently regarding certain succession property” and dismissed her reconventional demand with prejudice. The Wards filed a timely motion for a suspensive appeal.
 

 
 *520
 
 The Wards assert that the trial court erred in not finding that the Residuary Legatees’ petition was an impermissible collateral attack, by finding that Mr. Ward charged an excessive amount of attorney’s fees, and by dismissing Mrs. Ward’s recon-ventional demand.
 

 STANDARD OF REVIEW
 

 This Court may not set aside findings of fact of the trial court unless we find that the findings were manifestly erroneous or clearly wrong.
 
 Allerton v. Broussard,
 
 10-2071, p. 3 (La. 12/10/10), 50 So.3d 145, 147. As the appellate court, we “must review the record in its entirety and (1) find that a reasonable factual basis does not exist for the finding, and (2) further determine that the record establishes that the fact finder is clearly wrong or manifestly erroneous” in order to reverse the trial court.
 
 Id.
 
 If the trial court’s findings were reasonable, no manifest error exists.
 
 Stobart v. State, through Dep’t of Transp. and Dev.,
 
 617 So.2d 880, 882 (La.1993). “[R]easonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony.”
 
 Id.
 

 ‘‘However, where one or more trial court legal errors interdict the fact-finding process, the manifest error standard is no longer applicable.”
 
 Evans v. Lungrin,
 
 97-0541, 97-0577 (La.2/6/98), 708 So.2d 731, 735. “[I]f the record is otherwise complete, the appellate court should make its own independent
 
 de novo
 
 review of the record and determine a preponderance of the evidence.”
 
 Id. “A
 
 legal error occurs when a trial court applies incorrect principles of law and such errors are prejudicial.”
 
 Hamp’s Constr., L.L.C. v. Hous. Auth. of New Orleans,
 
 10-0816, p. 3 (La.App. 4 Cir. 12/1/10), 52 So.3d 970, 973. “Legal errors are prejudicial when they materially affect the outcome and deprive a party of substantial rights.”
 
 South East Auto Dealers Rental Ass’n, Inc. v. EZ Rent To Own, Inc.,
 
 07-0599, p. 5 (La.App. 4 Cir. 2/27/08), 980 So.2d 89, 93.
 

 Legal questions are reviewed utilizing the
 
 de novo
 
 standard of review.
 
 Cherry v. Audubon Ins. Co.,
 
 09-1646, p. 4 (La.App. 4 Cir. 10/20/10), 51 So.3d 109, 113.
 

 COLLATERAL ATTACK
 

 The Wards assert that the petition filed by the Residuary Legatees constituted an impermissible collateral attack on the order in the 24th JDC, which awarded Mr. Ward’s attorney’s fees.
 
 [4]
 
 “A collateral attack is defined as an attempt to impeach a decree in a proceeding not instituted for the express purpose of annulling it.”
 
 Lowman v. Merrick,
 
 06-0921, p. 10 (La.App. 1 Cir. 3/23/07), 960 So.2d 84, 90.
 

 Conversely, the Residuary Legatees contend that the claim of excessive attorney’s fees must be included in the petition for damages due to the doctrine of
 
 res judicata. “A
 
 party shall assert all causes of action arising out of the transaction Lor occurrence that is the subject matter of the litigation.” La. C.C.P. art. 425.
 

 Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:
 

 (1) If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the
 
 *521
 
 subject matter of the litigation are extinguished and merged in the judgment.
 

 (2) If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action.
 

 (3) A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment.
 

 La. R.S. 13:4231.
 

 The Residuary Legatees allege in their petition that Mr. Ward committed legal malpractice while handling the Succession, that he did not earn $39,500 in attorney’s fees, that he “failed to preserve and manage assets of the succession and obtained a judgment of possession improperly.” Succinctly, the Residuary Legatees asserted that Mr. Ward fell “below the standard of care for attorneys practicing in this community” and sought damages accordingly. Their petition does not seek to invalidate or nullify the judgment of the 24th JDC.
 

 We find that the Residuary Legatees had to include the claim for excessive attorney’s fees along with their claims for damages and assertion of conflicts of interest or the final judgment in the case
 
 sub judice
 
 would have barred the claim. Once a final judgment was rendered based upon the petition for damages, all of the possible claims by the Residuary Legatees would be extinguished. Further, the trial court did not attempt to invalidate the judgment from the 24th JDC and stated:
 

 I am not going to take up certainly Judge Regan’s | judgment. What I would think would be relevant herein is Ms. Cook’s opinion as to the billing practice itself, not to the end result. That’s for the Court to determine whether it was reasonáble or not, if I decide to take that up. And not to be in contravention of Judge Regan’s judgment, because I agree, it’s already been ruled on. But I will entertain a process opinion.
 

 Accordingly, we do not find that the Residuary Legatees’ suit was a collateral attack.
 

 EXCESSIVE ATTORNEY’S FEES
 

 The Wards contend that the Residuary Legatees did not prove that Mr. Ward’s attorney’s fees were excessive and that the trial court did not specify the amount of hours or which hours were needlessly charged.
 

 Mr. Ward testified that he practiced law for over fifty-six years, but was retired from the practice of law when he served as the attorney for the executrix and the Succession. He prepared the Decedent’s last will and testament, which named Mrs. Ward as the executrix. Mr. Ward stated that the Decedent was essentially debt free except for the mortgage on the co-owned immovable property. He testified that he knew of the mortgage. However, he did not include the mortgaged property on the List because: 1) he did not want to spend $600 on an appraisal, 2) the foreclosure process had begun, and 3) the Decedent no longer wanted to pay the mortgage prior to her death. Mr. Ward also testified that he omitted the thirty-five bags of jewelry from the List to avoid the appraisal fee.
 

 Mr. Ward testified that he worked approximately fifteen hours arranging the funeral and burial, prior to opening the Succession. He stated that he spent at least seven hours opening a checking account and disagreed that the previously mentioned functions were responsibilities of the executrix. Further, Mr. Ward testi
 
 *522
 
 fied that he spent at least twenty hours on two complaints filed by George 17Scifo, Jr. to the Louisiana Disciplinary Board. In regards to the deposition of Mrs. Ward, required by Mr. Seifo, Jr., Mr. Ward billed six hours for conferencing with David Browne, Mrs. Ward’s attorney, prior to the deposition, and eight hours for attending the deposition.
 
 [5]
 
 Mr. Ward billed twenty-five hours for preparing the documents for the probate of the will, travel, filing, and waiting for the judge to sign the pleadings. Mr. Ward’s notes also reflect that he charged six hours for preparing three checks and attending one meeting with some of the Decedent’s relatives.
 

 The remainder of Mr. Ward’s notations chronicles the procedure by which he calculated his charge for a total of 151 hours. Mr. Ward charged an hourly rate of $261.60. He charged for an entire hour even if he only worked forty-five minutes of the hour. Mr. Ward was unsure whether he totaled the bill of $37,000 first or the hourly rate.
 
 [6]
 
 Mr. Ward testified that his initial plan was to charge five percent of the assets of the Succession, which he valued at approximately $15,000.
 

 Byron Ann Cook, an attorney and the Residuary Legatees legal expert in probate and taxation,
 
 [7]
 
 testified that her opinion was that “Mr. Ward’s conduct was below the standard of care in” the community. Ms. Cook stated that Mr. Ward failed to include all of the Decedent’s assets in the List, petitioned for the judgment of possession without discussing it with the legatees or the relatives, and that he petitioned the court for the amended judgment of possession in March 13, 2007, without a hearing. She further stated that the judgment of possession was improperly amended.
 

 IsUpon reviewing Mr. Ward’s bill, Ms. Cook concluded that “a number of items ... were inappropriately billed to the estate.” That included billing fifteen hours for the funeral arrangements, which were not legal services. Ms. Cook also testified that she would have billed less than twenty-five hours for the preparation of the petition for probate and the affidavits of death and heirship. As for opening a checking account for the Succession, Ms. Cook stated that the work should have been performed in about an hour by the executrix in accordance with La. C.C.P. art. 3222. Ms. Cook would not have included Mrs. Ward’s personal defense as a debt of the Succession. Additionally, Ms. Cook would not have charged the Succession for items occurring pre-death/succession, for the time required to defend the disciplinary complaints, or for the petition to annul the Decedent’s pre-death transfers. Ms. Cook also testified that the checks are typically prepared by the executrix, but that the check preparation should have taken about fifteen minutes. Ms. Cook stated that Mrs. Ward’s deposition was not an expense of the Succession because she was not sued in her capacity as executrix, but in her capacity as a man
 
 *523
 
 date of the Decedent.
 
 [8]
 

 Ms. Fornerette testified that the Decedent prearranged her burial and made all arrangements. Ms. Fornerette also stated that Mr. Ward sought to disburse $100,000 to each of the Residuary Legatees instead of $126,946 each because he did not know if the Succession would be liable for additional funds on the mortgaged property.
 

 When determining the reasonableness of an attorney’s fee, we may evaluate:
 

 (1) The time and labor required, the novelty and |9difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) The fee customarily charged in the locality for similar legal services; (4) The amount involved and the results obtained; (5) The time limitations imposed by the client or by the circumstances; (6) The nature and length of the professional relationship with the client; (7) The experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) Whether the fee is fixed or contingent.
 

 State, Dep’t of Transp. and Dev. v. Williamson,
 
 597 So.2d 439, 442, n. 9 (La.1992),
 
 quoting
 
 Rule 1.5(a) of the Rules of Professional Conduct. When considering the above factors, we do not find that the trial court erred in ordering Mr. Ward to disgorge $24,500 of his attorney’s fees. First, the trial court was presented with conflicting testimony regarding the difficulty of the work and the amount of time required to perform the services. Further, the Residuary Legatees’ expert stated that Mr. Ward charged the Succession for some of Mrs. Ward’s responsibilities as the executrix of the Succession. Second, the Succession work did not preclude Mr. Ward from undertaking any other legal work, as he was retired. Further, the trial court found:
 

 [t]he Courts finds, considering the evidence, the hours accumulated by Mr. Ward to be excessive. Mr. Ward claimed that he spent 151 hours on the Succession of Mrs. Marguerite Graff at $261.00 an hour. Many of these hours, however, were unnecessary to probate Mrs. Graff’s will. Some of Mr. Ward’s time entries should not have been charged to the succession. These entries include Mr. Ward’s answers to complaints lodged with the Louisiana State Bar Association by George Scifo Jr., as well as Mrs. Ward’s deposition that was taken in preparation of this matter. The Court does not find the hourly rate to be outrageous given Mr. Ward’s experience. Considering the foregoing, the Court finds a reasonable amount of fees earned by Mr. Ward to be $15,000.00. Mr. Ward is ordered to disgorge $24,500.00 in collected fees related to the Succession of Mrs’. Marguerite Scifo.
 

 | ]0Given the conflicting testimony presented to the trial court, we do not find that the trial court manifestly erred by ordering the disgorgement of $24,500 of Mr. Ward’s attorney’s fees.
 
 [9]
 

 
 *524
 

 COMMISSION OF EXECUTRIX
 

 Lastly, Mrs. Ward contends that the trial court erred by denying her reconventional demand for an executrix commission pursuant to La. C.C.P. art. 3351.
 

 The statute provides that when the testament fails to provide for compensation, “the administrator or executor shall be allowed a sum equal to two and one-half percent of the amount of the inventory as compensation for his services in administering the succession.” La. C.C.P. art. 3351. The usage of the word “shall” connotes “must” in Louisiana’s legislative enactments. However, this Court held that “[a] succession representative has no absolute right to the executor’s fee provided for in La. C.C.P. art. 3351 until he has completed the administration of the succession and has filed his final account.”
 
 Succession of Vazquez,
 
 07-0816, p. 7 (La.App. 4 Cir. 1/16/08), 976 So.2d 209, 215. This Court further affirmed the trial court’s holding that an executor who failed to perform his duties and violated his position was not entitled to a commission.
 
 Id.
 
 We stated that the trial court’s determination was a factual one.
 
 Id.
 

 The trial court in the case
 
 sub judice
 
 found that Mrs. Ward “acted imprudently regarding certain succession property.” Further, the trial court found that the “weight of the evidence clearly established] a conflict of interest” between Mr. and Mrs. Ward. Finally, the trial court found “Mrs. Ward liable for. conflict of |ninterest as executrix of the Succession of Marguerite Scifo Graff by approving excessive attorney’s fees.”
 

 Mrs. Ward did not complete the Succession, as discussed in
 
 Vazquez.
 
 In fact, she was removed as the executrix. We do not find that the trial court erred in its factual findings that Mrs. Ward acted imprudently and had a conflict of interest. Therefore, we affirm the dismissal of Mrs. Ward’s reconventional demand.
 

 DECREE
 

 For the above mentioned reasons, we find that the trial court did not err and affirm the disgorgement of attorney’s fees and the dismissal of Mrs. Ward’s recon-ventional demand seeking an executrix commission.
 

 AFFIRMED
 

 [1]
 

 . Mr. Ward previously received $2,500 in attorney's fees.
 

 [2]
 

 . The motion to remove executrix and for accounting alleged that Mrs. Ward "failed to account for assets of the estate,” "failed to include assets in the Descriptive List,” took “possession of and exercised control over succession properties prior to the conclusion of the administration of” the succession, "failed to preserve and manage assets of the succession,” "obtained a judgment of possession improperly,” "paid her husband excessive legal fees as her attorney out of funds which were withheld in a judgment and an amended judgment of possession,” and "otherwise breached her fiduciary duties to the heirs and legatees in the above respects, all independently and in contravention of the provisions of LSA-C.C.P. Art. 3182.” Further, the motion alleged that Mrs. Ward, through Mr. Ward was "unresponsive to repeated requests for information concerning the decedent’s accounts and other properties” and "stated to certain heirs and legatees on more than one occasion that they will use the remaining succession assets if anyone attempts to challenge their actions or seek to remove her as executrix and her husband at [sic] attorney for the succession.”
 

 [3]
 

 .The judgment removing Mrs. Ward as executrix is not contained in the record, but her formal removal is undisputed.
 

 [4]
 

 . The Wards did not file a declinatory exception asserting that the matter was not properly before the trial court. Mrs. Ward did file a reconventional demand.
 

 [5]
 

 . The deposition was in relation to pre-death transfers and not regarding Mrs. Ward’s capacity as executrix.
 

 [6]
 

 . The handwritten notes on the typed sheets entered into evidence show that the total number of hours Mr. Ward alleged worked, 151, was divided into $39,500, which created the $261.60 hourly rate. However, the handwritten hourly notes document that Mr. Ward multiplied 151 hours by $262, which equaled $39,562.00. Thus, it is unclear from the evidence if Mr. Ward calculated his hourly rate prior to the lump sum amount of attorney’s fees.
 

 [7]
 

 .Ms. Cook is board certified in estate planning and administration and board certified in taxation.
 

 [8]
 

 . On November 9, 2005, the Decedent appointed Mrs. Ward as her agent to perform the following: 1) “[t]o open all correspondence addressed to me,” 2) "[t]o prepare checks and draw needed money from any bank bank [sic] account to pay my bills only,” 3) ”[t]o deposit any dividends or funds received to my bank account,” 4) ”[t]o perform whatever acts that may be necessary for my general well-being and to preserve my assets,” and 5) “[t]o reinvest my certificates of deposit when they mature.”
 

 [9]
 

 . The Wards assert that it was "unclear” how the trial court calculated the disgorgement figure of $24,500. However, as stated above,
 
 *524
 
 $39,500 minus $24,500 equals $15,000, approximately five percent of the assets of the Succession.