DANIEL L. DYSART, Judge.
| ¶This appeal arises out. of a mandamus proceeding through which the Clerk .of Court.for Orleans Parish was directed to cancel a statement of claim filed under La. *631 R.S. 38:2241 et seq. of the Public Works Act (the “Act”). For the reasons that follow, we affirm and remand.
FACTS AND PROCEDURAL BACKGROUND
Gootee Construction, Inc. (“Gootee") commenced this action by filing a Petition for Mandamus to Cancel Improperly Recorded Claim Under the Louisiana Public Works Acf (“Petition”) on November 21, 2014. The Petition alleges that, on September 29, 2011, Gootee contracted'with McDonnel — Archer Western Joint Venture (“McDonnel”) “to provide certain labor and material” for a public works project for which McDonnel served as the general contractor,[1] Gootee thereafter subcontracted with Land Coast Insulation, Inc, (“Land Coast”) on October 18, 2012 for the latter to perform certain work on the Prime Contract,[2] ,
I ¡According to the Petition, the subcontract with Land Coast required that Land Coast perform the work called for in the subcontract in a timely manner and in accordance with the schedule set forth in the Prime Contract. Gootee alleged that Land Coast did not comply with, nor timely execute, its obligations under the subcontract. Gootee further alleged that Land Coast improperly filed a “Statement of Amount Due” (“Statement") in the public records for Orleans Parish. Gootee maintains that, because Land Coast breached its duties under the subcontract, it had no right to recover the amounts claimed. Gootee further maintains that, because Gootee had not been paid by McDonnel for any of the amounts claimed in the Statement, no amounts were yet owed to Land Coast and, accordingly, the filing of the Statement was improper.
The Petition further indicates that Goo-tee sent a written demand to Land Coast for the cancellation, of the Statement on November 11, 2014; however, Land Coast refused. According to Gootee, because of the-filing of the Statement, McDonnel has refused to issue any further payments to it until the Statement is cancelled, “causting] significant damages to Gootee.” On this basis, the Petition sought, a mandamus, compelling the cancellation of the Statement. .-The Petition also sought damages, costs and attorney’s fees.
■The trial court issued an order compelling the Honorable Dale N. Atkins and Land Coast to cancel the Statement or to show cause as ■ to why the mandamus should not be made preemptive. A hearing was then held on December 8, 2014, at which time the trial court granted a writ of-mandamus, ordering that the Statement be cancelled.
IsOn December 16, 2014, Land Coast filed a motion to suspensively appeal the December 3, 2014 judgment. The trial court granted order .of the appeal on December 18, 2014, setting a suspensive bond at $5,000.
That same day, December 16,2014, Goo-tee moved to fix recoverable attorney’s fees, expenses and costs and a hearing on Gootee’s motion was set for January 9, 2015. Two days before the hearing, on January 7, 2015, Gootee moved to continue the hearing without date “pending the outcome of Land Coast’s appeal.”
On April 9,2015, Gootee moved to either dismiss Land Coast’s suspensive appeal or *632 to convert it to a devolutive appeal based on Land Coast’s failure to timely post the suspensive bond.[3] ■ In the same motion, Gootee moved to reset its hearing on the motion to fix attorney’s fees, expenses and costs. Gootee then filed an answer to the appeal in this Court on- April 23, 2015, seeking a modification of the December 3, 2014 judgment to include an award for attorney’s fees, expenses and costs it incurred in connection with the Statement.[4]
A hearing was held on Gootee’s motions (to dismiss/convert the suspensive appeal and to fix attorney’s fees, expenses and costs) on May 8, 2015. By judgment dated June 2, 2015, 'the trial court granted the motion to dismiss the suspensive appeal, but denied the request for fees and costs.[5] Gootee requested [¿written reasons for judgment, although the record before us does not contain a copy- of those reasons.[6] DISCUSSION

Trial court’s grant of mandamus

A writ of mandamus may be issued “to a public officer to compel the performance of a ministerial duty required' by law....” La. C.C.P. art. 3863. Under La. C.C.P. art. 3862, a mandamus “may be issued in all cases where the law provides no relief by ordinary means or where the delay involved in' obtaining ordinary relief may cause injustice.” ■ As in the instant matter, the mandamus process is the appropriate means to compel the cancellation of a lien which was improperly filed under the Act. See, e.g., L & A Contracting Co. v. Mabry, 637 So.2d 1090, 1093-94 (La. App. 2 Cir.1994)(“[m]andamus has been held to be the proper remedy for compelling a recorder of mortgages to cancel or erase an illegal or unauthorized inscription”), citing Realsco, Inc. v. Green Acres Civic Association, 169 So.2d 570 (La.App. 4th Cir.1964); Gauguin, Inc. v. Addison, 288 So.2d 893 (La.App. 1 Cir.1973); Klein v. Recorder of Mortgages for Parish of Orleans, 430 So.2d 1047 (La.App. 4 Cir.1983).
The éssential facts of this case are not seriously contested. Rather, the issues in this matter are of a purely legal ñatee and, accordingly, we employ a de novo standard of review. 2400 Canal, LLC v. Bd. of Sup’rs of Louisiana State Univ. Agr. & Mech. Coll., 12-0220, p. 5 (La.App. 4 Cir. 11/7/12), 105 So.3d 819, 824, 5quoting Farmerette v. Ward, 10-1219, p. 4 (La.App. 4 Cir. 5/11/11), 66 So.3d 516, 520 (“Legal questions are reviewed utilizing the de novo standard of review.”). *633 “When considering legal issues, the appellate court assigns no special weight to the trial court and, instead, conducts a de novo review of questions of ■ law and renders judgment on the record.” Id., quoting Roger A. Stetter, La. Prac. Civ.App. § 10:53 (2011 ed.).
There is no dispute in this matter that work undertaken by the parties falls within and is subject to the provisions of the Act,[7] which was enacted for the express purpose of protecting those who perform work on a. public works project. As the Louisiana Supreme Court explained:
Because of the need to protect those performing labor and furnishing materials for public works, the Legislature in 1918 passed Act 224, the precursor to current public works statutes, La. R.S. 38:2241 et seq., granting rights to laborers and materialmen involved in public works. Porter [v. Town of Ville Platte, [158 La. 342] 104 So. 67,] 70; York Corp. v. Louisiana Plumbing Co., 151 So.2d 520 (La.App. 2d Cir.), writ denied, 244 La. 400, 152 So.2d 213 (1963). The public contract law did not grant its beneficiaries a lien on the public work itself, but gave them, in effect, a “privilege against the unexpended fund in the possession of the authorities with whom the original contract ha[d] been entered into.” Pigeon-Thomas Iron Co. v. Drew Bros., 162 La. 836, 839, 111 So. 182, 183 (1926). Act 224 stated as its purpose the protéction of “persons doing work, performing labor or furnishing material for the construction ... of public buildings-” La. Legis. Acts, 1918, No. 224.
Wilkin v. Dev Con Builders, Inc., 561 So.2d 66, 70 (La.1990), The Act is designed to protect parties who-perform work on public contracts because “[ujnlike Ltheir counterparts- on private building projects, workers and suppliers engaged by public agencies cannot protect themselves with liens against public property because liens are not enforceable against publicly-owned property.” Elec. Supply Co. v. Great Am. Ins. Co., 42,727, p. 2 (La.App. 2 Cir. 12/12/07), 973 So.2d 827, 829, citing State Through Div. of Admin. v. McInnis Bros. Const., 97-0742 (La.10/21/97), 701 So.2d 937; VVP America, Inc. v. Design Build Development Services, Inc., 41,652 (La.App.2d Cir.1/31/07), 951 So.2d 461. See also, U.S. Pollution Control, Inc. v. Nat’l Am. Ins. Co., 95-153, p. 3 (La.App. 3 Cir. 8/30/95), 663 So.2d 119, 121 (“Public Works Act was passed to protect laborers and materialmen involved in public works projects by offering them a vehicle by which they could recover monies owed'to them for material or labor spent on behalf of the public works project”).
' The Act sets forth specific procedures which must be followed in order to preserve certain '“privileges. To perfect a claim under thé Act, a claimant may, “after the maturity'of his claim and within forty-five days after the recordation of acceptance of the work by the governing authority or of notice of default of the contractor or subcontractor, file a sworn statement-of the amount due him with the governing authority having the work done and record it in the office of the recorder óf mortgages for the parish' in which the work is dohe.” La. R.S. 38:2242 B.[8]
*634 The Act requires a public entity which “enters' into a written contract for the construction, alteration, or repair of any public works .... [to have recorded by its official representative] in the office of the recorder of mortgages, in..the parish |7where the work ,has been done, an acceptance of such work ... not later than thirty calendar days after the date of completion or, substantial completion of such work.” La. R.S. 38:2241.1 A. “Substantial completion” is defined by the Act as “the finishing of construction, in accordance with the contract documents as modified by any change orders agreed to by the parties, to the extent that the, public .entity can use or occupy the public works or use or occupy the specified area of the. public works for the use for which -it was intended.” La. R.S. 38:2241.1 B. That section further provides that “[t]he recordation of an acceptance in accordance with the provisions of this Section upon substantial completion shall be effective as an acceptance for all purposes under this Chapter.” Id.
The question with which we are presented in this case is whether Land Coast met the requirements of La, R.S. 38:2242, or as Land Coast maintains, its claim was properly recorded insofar as the statute does not prohibit the' filing of claims prior to the recordation of acceptance by the project’s owner (in this case, the Orleans Parish Sheriffs Office) and allows such filings against a statutory payment bond. The trial court disagreed with Land Coast’s position, finding, in its Reasons for Judgment, that “the claim has not matured [within the meaning of La. R.S. 38:2242(B)], in that not all of the lien amounts have been received nor has the recordation of acceptance of the work been done by the governing authority, the Sheriff for the Parish of Orleans.”[9]
We agree with the trial court that the explicit requirements of La. R.S. 38:2242 were not met, and therefore, the Statement was prematurely filed. Our [ «ruling in no way affects Land Coast’s future ability to perfect a claim under the Act.
A plain reading of the Act indicates that, once a public work project has reached substantial completion, the public entity for which the work was performed must, within thirty calendar days, file an acceptance of the work in the mortgage recorder’s office. Thereafter, and “within 45 days after the recordation of acceptance of the work,” a claimant may file a statement of claim. La. R.S. 38:2242 B. (Emphasis added.). ■
Land Coast interprets this language to indicate that “[i]f a Claim is recorded prior to acceptance, it can nonetheless certainly be within forty-five days of the acceptance of the work.” We disagree.
The statute does not state that the claim must be filed within forty-five days “of” the acceptance, but rather, within forty-five days “after" the acceptance. An interpretation of the statute in the manner suggested by Land Coast would require a claimant to be omniscient so as, to know when to file a claim both prior to and within forty-five days of the filing of. the acceptance. Clearly, this was not the intent of the statute. See, e.g., D & J Const. Co. v. Mid-Continent Stone Co., 571 So.2d 762, 763 (La.App. 2 Cir.1990)(the Act “provides a 45-day time limitation for the claim *635 to be filed after recordation of acceptance of work by the governing authority.”)(Emphasis added).
Land Coast also argues that its claim reached maturity when it “performed the work upon which he [sic] claim is based and complied with the statutory prerequisites in the Act.” This argument is in line with Land Coast’s contention that the “pay-if-paid” clause within the subcontract does not negate its right of action against the general contractor (McDonnel) and the sureties on the bond. |aLand Coast concedes that, “while the pay-if-paid clause ... may arguably be a suspensive condition to some dr all of Gootee’s payment obligation to Land Coast under the subcontract, the obligation under the payment bond is not subject to that suspénsive condition.” As such, according to Land Coast’s argument, despite the “paid-if-paid clause,” it may still proceed against the bond despite the fact that Gootee may not first have been paid by McDonnel.
Land Coast’s, argument is based on a condition in the Master Terms and Conditions contained in the subcontract, which provides, in pertinent part, as follows:
12.4 PAYMENTS TO THE SUBCONTRACTOR
12.4.1 Unless otherwise provided in the Contract Documents, Gootee Construction, Inc. shall pay [Land Coast] each progress payment and the, final payment under this Subcontract within, fourteen working days after he receives payment from the Owner....
We note that the terms of the final payment provisions of the subcontract also provide that “payment to. [Land Coast] is conditioned on Gootee ... being paid by the Owner; i.e., Gootee ... is not obligated to pay [Land Coast] unless and until it has been paid by the Owner for [Land Coast’s] work hereunder.” (Article 6, Section 6.1 of the subcontract).
Land Coast relies heavily on the First Circuit decision of Glencoe Educ. Found., Inc. v. Clerk of Court & Recorder of Mortgages for Parish of St. Mary, 101872 (La.App. 1 Cir. 5/6/11), 65 So.3d 225, writ denied, 11-1142 (La.10/21/11), 73 So.3d 383. We find this reliance to be misplaced as Glencoe dealt with an entirely different issue than that presented in the instant matter.
■ In Glencoe, a charter school entered into a contract with a. general contractor (“GC”) for the construction of a new building. ■ The GC obtained two bonds — one I ;nto secure the GC’s performance; the other to secure payment to all entities performing work under, the contract. The GC then subcontracted with two companies for certain aspects of the construction project. When a dispute arose between the charter school and the GC over the work itself, the charter school withheld payment of the remaining balance owed to the GC and recorded a termination of the contract. Statements of claims were filed by the GC and both of the subcontractors. The charter school then filed a concursus proceeding seeking to have the statements of claims cancelled because of the existence of the payment bond.
In the concursus proceeding, both of the subcontractors sought the satisfaction of their claims from the payment bond. The trial court initially dismissed all claims against the charter school and directed the clerk of court to cancel' all claims against it. The trial court then conducted a trial of 'all issues and, as pertained to the subcontractors, the trial court dismissed their claims against the general contractor, but entered judgment against the surety on the payment bond. On appeal, the court framed the precise issue before it— “whether a surety, which has issued a statutory bond governed by the provisions of the Public Works Act, may rely on a ‘pay if paid’ clause in a principal’s subcon *636 tract as a defense to payment of sums owed to subcontractors which have performed work ... on a public construction project.” Id., 10-1872, p. 9, 65 So.3d at 230.
The Glencoe court first addressed the purpose of the Act, and then, notably, commented that “[t]he payment bond serves as an additional fund or security to assure that those who perform work on public projects receive payment for their work in the event of a contractor’s inability to fulfill its payment obligations.” Id., In 10-1872, p. 10, 65 So.3d at 231. (Emphasis added.).[10] The court ultimately held that:
... allowing a surety to assert a “pay if paid” clause to defeat payment to a subcontractor on the basis that the contractor has not received full payment from the owner, where the owner has escaped liability to the subcontractors by relying on the payment bond, would render the protections afforded to laborers and suppliers on public works projects set forth in the Public Works Act meaningless. The application of traditional suretyship law principles in this scenario is contrary to the Act’s avowed purpose of providing a source of security to those performing work and furnishing materials on public projects. Because the contractual provision on which Hartford relies is contrary to the purpose of the Public Works Act, we hold that Hartford may not assert the “pay if paid” provisions of the Lamar subcontracts to defeat its liability to pay subcontractors pursuant to the terms of -the statutory bond.
Id., 10-1872, pp. 14-15, 65 So.3d at 233.
Thus, the issue before the court in Glen-coe was not whether a statement of claim was timely or properly filed under La. R.S. 38:2242. Rather, the Glencoe case dealt with a claimant’s rights to proceed against a surety on a public works project once the contractor could no longer “faithfully perform the contract.” Id., 10-1872, p. 11, 65 So.3d at 231. The bond has the effect of “transfer[ring] the risk that a contractor will be unable to perform its obligations from the public entity to the surety.” Id.
The right to payment under the bond is not at issue in this case at this time. Under the Act, as a prerequisite to making a claim under a statutory bond, a claimant must first comply with the provisions of La. R.S. 38:2242 B. The Act | ^specifically requires such compliance, as evidenced by La. R.S. 38:2247, which states, in pertinent part:
Nothing in this Part shall be construed to deprive any claimant, as defined in this Part and who has complied with the notice and recordation requirements of R.S. 38:2212(B), of his right of action on the bond furnished pursuant to this Part, provided that said action must be brought against the surety or the contractor or both within one year from the registry of acceptance of the work or of notice of default of the contractor; except that before any claimant having a direct contractual relationship with a subcontractor but no contractual relationship with the contractor shall have a right of action against the contractor or the surety on the bond furnished by the contractor, he shall in addition to the notice and recordation required in R.S. 38:2242(B) give written notice to said contractor within forty-five days from *637 the recordation of the- notice of acceptance by the owner of the work or notice by the owner of default, stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished- or supplied or for whom the labor or- service' was done or performed.'
(Emphasis added.).
Even if we were to agree that Land Coast was indeed, as .it argues, asserting its rights against the payment bond, its Statement was also premature under the unambiguous language of La. R.S. 38:2247 for a number of reasons. First,, before asserting its rights against the bond, Land Coast, had to comply with La. R.S. 38:2242 B. As previously discussed, La. R.S. 38:2242 B permits Land Coast’ to file its claim only “within forty-five days after the recordation of acceptance of the work.” Second, its action against the bond must be filed within one year from the registry “of acceptance of the work.or of notice, of default of the contractor.” Third, because Land Coast did not have a contractual relationship with McDonnel, Land Coast must have first given written notice to McDonnel “within forty-five |iadays from the recordation of the notice of acceptance by [McDonnel] of the work or notice by [the Orleans Parish Sheriff’s Office] of default.”
None of these provisions were met. It is the registry of the acceptance of the work, or notice of default, that triggers the forty-five day period contemplated by the statute. Neither acceptance of the work •nor notice of default was filed by .the Orleans Parish Sheriffs Office in this case. Accordingly, any effort' to secure payment under the bond at this time would be premature. To hold otherwise would have the result of allowing any entity performing work under the Act-to simply send its invoices for payment to a surety in the event it is.not paid in a manner it considers timely. ■
Our' finding is consistent with our jurisprudence interpreting La. R.S. 38:2247. In Interstate Sch. Supply Co. v. Guitreau’s Const. & Consulting Co., 542 So.2d 138 (La.App. 1 Cir.1989), for example, the First Circuit rejected the argument that “La.R.S. 38:2242 applies] only to maintaining a right of action against the governing authority and have [sic] no bearing on maintaining an action against the surety.” The court noted:
Prior to September of 1985, La. R.S. 38:2247 provided that nothing in the part dealing with notice and recordation “shall be construed to deprive any person or claimant ... of his right of action on the contractor’s bond.... ” Based on this language the Supreme Court decided in Honeywell, Inc. v. Jimmie B. Guinn, Inc., 462 So.2d 145 (La.1985), that “an unpaid sub-contractor having a direct contractual relationship with the contractor may sue on the contractor’s , bond without filing and recording a sworn claim or giving written -notice to the contractor”. Honeywell, 462 So.2d at 148. The legislature acted immediately to amend La. R.S. 38:2247 to provide that, “Nothing in this Part shall be construed to deprive any claimant ... who has complied with the notice and recordation requirements of ' R.S. 38:2242(B), of his right of action on the bond." (emphasis supplied). Where compliance with the notice 114requirements had not been necessary in order to proceed on the bond, the amendment specifically requires compliance with the notice requirements in order to do so. The amendment overrules Honeywell _ the specific language of La.R.S. 38:2247 requires compliance with the notice requirements in *638 order to proceed “on the bond”. The clear language cannot be ignored.
Id., 542 So.2d at 139. See also, John F. Sanchez Plumbing Co. v. Aetna Cas. & Sur. Co., 564 So.2d 1302, 1303 (La.App. 1 Cir.1990)(“In order to proceed “on the bond” the claimant must comply with the notice and recordation requirements of La. R.S. 38:2242(B). La.R.S. 38:2247”); Gulf Coast Refrigeration, LLC v. Houma Terrebonne Hous. Auth, 13-1512, p. 2 (La.App. 1 Cir. 3/24/14), 2014 WL 1175898, (unpublished), writ denied, 14-0855 (La.6/20/14), 141 So.3d 811 (“It is obvious from the record that [the subcontractor] filed and recorded its lien well beyond the forty-five days after which [the general contractor] went into default. In order to proceed on the bond, the claimant must comply with the notice and recordation requirements of La. R.S. 38:2242(B). La. R.S. 38:2247.”); Cf., J. Reed Constructors, Inc. v. Roofing Supply Grp., L.L.C., 12-2136, p. 5 (La.App. 1 Cir. 11/1/13), 135 So.3d 752, 755, writ denied, 14-1031 (La.9/12/14), 148 So.3d 931(“the material-man claimant must first comply with -the notice and recordation requirements of La. R.S.. 38:2242(B), and (F) in order to preserve the right to file a privilege or lien,”); United Rentals Highway Technologies, Inc. v. St. Paul Sur., 37,265, p. 6 (La.App. 2 Cir. 8/20/03), 852 So.2d 1200, 1204 (“Furthermore; if a third party fails to preserve his statutory privilege by timely filing a sworn statement of his claim with the owner and duly record the claim within the statutory time delay, then the third party has no .right of action on the bond-securing performance and the bond maybe summarily erased and canceled upon the demand of any .party in interest.”).
litJt is clear that, under La. R.S. 38:2247 and our jurisprudence interpreting the statute that, before a claimant seeks to proceed against a surety, it.must first comply with the provisions of La. R.S. 28:2242. That is, the claimant must first file a sworn statement of claim.“after [its] maturity and within forty-five days after recor-dation of acceptance ... or notice of default.” Thereafter, a claimant may, within a year of either occurrence, assert a right of action against the surety. Until an acceptance or notice of default has been filed, a claim under the Act, like the Statement in the instant tóatter,' is premature.[11]

Trial court’s failure to admit payment bond into evidence

In its second assignment of error, Land Coast maintains that the trial court erred in refusing to allow it to introduce the payment bond at the December 3, 2014 evidentiary hearing. Land Coast contends that the “bond is relevant to a mandamus to cancel a claim establishing a right of action against that bond.”
As discussed above, we have concluded that, based on the provisions of La. R.S. 38:2247, a claimant may not proceed agairist a bond until it has first complied “with the notice and recordation requirements of R.S. 38:2242(B).” Id. We likewise concluded that, until such time, any action against the bond would be premature. For this reason, the bond is not at issue and, therefore, is not relevant to this case. We find no abuse of the trial court’s discretion in disallowing the introduction of the bond into-evidence at the hearing. See, Brooks v, Reimonenq, 10-0296, p. 4 (La.App. 4 Cir. 7/21/10), 44 So.3d 824, 827 (“a trial court’s rulings on evidentiary issues will not be disturbed absent a clear abuse of discretion.”),

*639
\wGootee’s claim for attorney’s fees, costs and expenses

As noted, on December 16, 2014, Gootee filed a Motion to Fix Recoverable Attorney’s Fees, Expenses and Costs. The hearing on the motion was continued without date on “pending the outcome of Land Coast’s appeal.” Thereafter, Gootee moved to set its motion for a hearing on April 9, 2015 (approximately four months after Land Coast filed its motion for a suspensive appeal). Goótee then answered the appeal on April 23, 2015, seeking a modification of the December 3, 2014 judgment to include an award for attorney’s fees, expenses; and costs it incurred in' connection with the Statement.1 The trial court heard Gootee’s motion on May 8, 2015 and denied' the motion by judgment dated June 2, 2015. The judgment does not indicate the trial court’s reasons for the denial and, at this time, the record has not been supplemented with the trial court’s reasons for judgment.[12]
 The only matter before us is that raised by Gootee’s answer to the appeal filed on April 23, 2015. At the time that Gootee answered the appeal, the trial court-had- not ruled on its motion to fix its attorney’s fees, costs and expenses. Accordingly, the issues raised in its motion, having not been decided by the trial court, are not properly before us. See, Rowley v. Eye Surgery Ctr. of Louisiana, Inc., 06-1243, p. 5, n. 8 (La.App. 4 Cir. 4/4/07), 956 So.2d 680, 684 (“courts of appeal may not consider issues which were not ... addressed by the trial court.”).
While the record reflects that the trial court ultimately ruled on Gootee’s motion by judgment dated June 2, 2015, there was no appeal taken of this judgment. Accordingly, the June 2, 2015 judgment is not before this Court.
|17Gootee now requests that this Court award it reasonable attorney’s fees, costs and expenses pursuant to La. R.S. 38:2242.1, plus legal interest from the date of judicial demand. Under that statute, “[o]ne who, without reasonable cause, fails to deliver written authorization to cancel a statement of claim .,. shall be liable for damages suffered by the ... subcontractor ... requesting the authorization as a consequence of the, failure and for reasonable attorney’s fees incurred in causing the statement to be cancelled.” La., R.S. 38:2242.1 B.[13] A determination as to whether Land Coast had reasonable cause must be made only after a hearing on that issue. Similarly, if Gootee were to establish that it is entitled to attorney’s fees and damages under the statute, the amount of those fees and a damages award' should be determined only after an evidentiary hearing. ■
We decline, therefore, to-consider Goo-tee’s request for an. award of attorney’s fees. We remand this matter to the trial court for a full evidentiary hearing on these issues., ■
^CONCLUSION
For the reasons set -forth- herein, the judgment of the trial court is affirmed. We remand this matter to the trial court for a determination of whether Gootee is entitled to damages and attorney’s fees pursuant to La. R.S. 38:2242.1,
AFFIRMED AND REMANDED.

, Thu project was entitled: "Orleans Parish Sheriffs Office — Intake Processing Center/Templeman III and IV Replacement; Project No. 211098” (hereafter referred to as the "Prime Contract”),

. The subcontract called for Land Coast to "provide material, labor, equipment, tools, and insurance to perform all insulation work in accordance with plans, specifications, and addenda” for the Prime Contract.

. Pursuant to La. C.C.Pr. art. 2123 A(l), a suspensive bond must be furnished within 30 days of the "expiration of the delay for applying for a new trial_” Land Coast's sus-pensive bond, filed on January 19, 2015 was untimely. The result is that Land Coast’s appeal is no longer a suspensive appeal; rather, it is now a devolutive appeal. See, e.g., Franco v. Franco, 04-0967, p. 13 (La.App. 4 Cir. 7/28/04), 881 So.2d 131, 139 ("a failure to pay a suspensive appeal bond is not generally considered grounds for dismissal because the appeal is simply converted to a devolutive appeal when the appeal bond is not timely paid”).

. The Answer to the Appeal was also filed into the record of the Civil District Court proceeding on April 23, 2015.

. While the judgment grants the motion to dismiss the suspensive appeal, it does not expressly convert it to a devolutive appeal. However, as noted in footnote 3, above, the appeal was converted to a devolutive appeal by virtue of Land Coast’s failure to timely post a suspensive appeal bond.
As to the Motion for ”[r]ecoverable [f]ees, '[ejxpenses and [cjosts,” the judgment simply denies that request without reason.

. Gootee requested leave of Court to supple- ■ ment the record with the trial court’s reasons ■for judgment. Leave was granted on October 1, 2015. As of the date of this opinion, the record has not been supplemented with those reasons.

. A "public work” is defined as “the erection, construction, alteration, improvement, or repair of any public facility or immovable property owned, used, or leased by a public entity." La. R.S. 38:2211 A(12).

. A “claimant” is defined under the Act as "any person to whom money is due pursuant to a contract with the owner or a contractor or subcontractor for doing work, perfprming labor, or furnishing materials or supplies for *634 the construction, alteration, or repair of any public works,...” La. R.S. 22:2242 A

. Land Coast states that the trial court, in its Reasons For Judgment, stated" that the " ’pay-if-paid’ clause rendered the recordation of Land Coast’s [Statement] premature, and, therefore, improper.” The trial court made no express finding with respect to a "pay-it-paid” clause.

. The court further explained: ‘‘[t]he bond requirements of the Public Works Act also serve to protect the public entity from loss and expense arising out of the failure of the contractor to faithfully perform the contract. In essence, the payment bond transfers the risk that a contractor will be unable to perform its contractual obligations from the public entity to the surety.” Id., 10-1872, pp. 10-11, 65 So.3d at 231. (Citation omitted.).

. Because \ye have determined that the Statement was prematurely filed, we need not consider the propriety of Land Coast’s inclusion of some specific items in the Statement (e.g. retainage, estimated charges for change orders). ' A discussion of those specific items is not relevant to this appeal.

. We note that, in its appelhite brief, Gootee indicates that the trial court, denied its motion because it found it no longer had jurisdiction to consider the motion.

. The statute references damages and attorney’s fees. It does not contain a provision for an award of expenses and costs.