**GOOTEE CONSTRUCTION, INC.**

**v.**

**Dale N. ATKINS, et al.**

**NO. 2015–CA–0376**

Court of Appeal of Louisiana, Fourth Circuit.

**DECEMBER 21, 2016**

---

486

Michael E. Botnick, Phillip J. Antis, Jr., J. Douglas Rhorer, GORDON ARATA McCOLLAM DUPLANTIS & EAGAN, L.L.P., 201 St. Charles Avenue, 40th Floor, New Orleans, LA 70170–4000, COUNSEL FOR PLAINTIFF/APPELLEE

David C. Voss, E. Allen Graves, Jr., David W. Carley, GRAVES CARLEY, L.L.P., 2137 Quail Run Drive, Building B, Baton Rouge, LA 70808, COUNSEL FOR DEFENDANT/APPELLANT

(Court composed of Judge Roland L. Belsome, Judge Paul A. Bonin, Judge Daniel L. Dysart)

Judge Daniel L. Dysart

This case was initially before this Court on the appeal of Land Coast Insulation, Inc. ("Land Coast"), of the trial court's grant of a writ of mandamus which ordered that a Statement of Amount Due ("Statement"), filed under the Public Works Act (the "Act") in the mortgage records against Gootee Construction, Inc. ("Gootee"), be cancelled.[1] *See Gootee Const., Inc. v. Atkins*, 15–0376 (La.App. 4 Cir. 11/4/15), 178 So.3d 629 ("*Gootee I*"). We affirmed the trial court's judgment, finding that Land Coast's Statement was premature under La. R.S. 38:2242. *Id.* We also found that Gootee's motion for attorney's fees, costs and expenses was not properly before this Court because it had not been ruled upon by the trial court prior to the appeal. *Id.* Accordingly, we

1. Gootee answered the appeal seeking a modification of the trial court's judgment to include an award for attorney's fees, costs and expenses. On the same day that Land Coast filed its motion for appeal, Gootee filed a motion to fix recoverable attorney's fees, costs and expenses in the trial court. The trial court had not ruled on its motion when Gootee answered the appeal.

remanded the matter to the trial court for a hearing as to Gootee's motion. *Id.*

Land Coast then applied to the Louisiana Supreme Court for a writ of certiorari and/or review which was granted on September 23, 2016. The Louisiana Supreme Court issued a remand order for this Court to "reconsider in light of ⌊₂*Pierce Foundation, Inc. v. Jaroy Construction, Inc.*, 15–0785 (La. 5/3/16), 190 So.3d 298." Having carefully reviewed the *Pierce* case, we find that the pertinent issue presented by this matter was not addressed by the *Pierce* Court. Accordingly, we find that the *Pierce* decision does not change our earlier decision and we reaffirm that decision.

In *Pierce*, the defendant, JaRoy Construction, Inc. ("JaRoy"), a general contractor, entered into a contract for the construction of a gymnasium (a public works project) with the Jefferson Parish Council. In compliance with La. R.S. 38:2241 A(2), JaRoy obtained a bond with a surety, Ohio Casualty Insurance Company ("OCIC").[2] JaRoy then entered into a subcontract with Pierce Foundation, Inc. ("Pierce") for the installation of pilings. After completing its work on November 3, 2008, and upon non-payment from JaRoy, Pierce filed a petition against JaRoy in July, 2009. A year later, in July, 2010, Pierce added OCIC as a defendant to its suit. JaRoy then filed for bankruptcy in December, 2010 and the matter proceeded against OCIC, alone.

Almost a year later, on October 17, 2011, Jefferson Parish filed a notice of acceptance of the work in the mortgage records. At no time did Pierce file a sworn statement of claim in the mortgage records.

OCIC moved for summary judgment on the basis that Pierce failed to comply with the notice and recordation requirements of La. R.S. 38:2242 B,[3] and ⌊₃as such, had not preserved its rights to proceed against it, citing La. R.S. 38:2247.[4] The Supreme Court found that La. R.S. 38:2242 and La. R.S. 28:2237 use "confusing—even conflicting—language," insofar as the former stat-

**2.** Under the Public Works Act, a contractor who is awarded a public contract exceeding the sum of $25,000.00 is required to obtain "a bond with good, solvent, and sufficient surety in a sum of not less than fifty percent of the contract price for the payment by the contractor or subcontractor to claimants as defined in R.S. 38:2242." La. R.S. 38:2241 A(2).

**3.** La. R.S. 38:2242 B provides:

Any claimant may after the maturity of his claim and within forty-five days after the recordation of acceptance of the work by the governing authority or of notice of default of the contractor or subcontractor, file a sworn statement of the amount due him with the governing authority having the work done and record it in the office of the recorder of mortgages for the parish in which the work is done.

**4.** La. R.S. 38:2247 provides, in pertinent part, that:

Nothing in this Part shall be construed to deprive any claimant, as defined in this Part and who has complied with the notice and recordation requirements of R.S. 38:2242(B), of his right of action on the bond furnished pursuant to this Part, provided that said action must be brought against the surety or the contractor or both within one year from the registry of acceptance of the work or of notice of default of the contractor; except that before any claimant having a direct contractual relationship with a subcontractor but no contractual relationship with the contractor shall have a right of action against the contractor or the surety on the bond furnished by the contractor, he shall in addition to the notice and recordation required in R.S. 38:2242(B) give written notice to said contractor within forty-five days from the recordation of the notice of acceptance by the owner of the work or notice by the owner of default, stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor or service was done or performed....

ute uses the term "may," while the latter statute uses the restrictive term "requirements." *Id.*, 15–0785, p. 10, 190 So.3d at 305. That is, while La. R.S. 38:2242 provides that a claimant "may" file a sworn statement of the amount claimed, La. R.S. 38:2247 suggests that a claimant is "required" to comply with La. R.S. 38:2242 B in order to proceed against a bond (given that La. R.S. 38:2247 expressly states that a claimant "who has complied with the notice and recordation *requirements* of R.S. 38:2242(B)," is not deprived "of his right of action on the bond"(emphasis added)). The Court determined that these provisions create an ambiguity in the Act.

The *Pierce* Court noted that "the [A]ct, [whose purpose] is to 'protect those performing labor and furnishing materials for public works' rather than protecting the sureties on the bond[,] . . . creates an *additional* remedy to persons contributing to the construction, alteration, or repair of public works—a 'privilege against the unexpended fund in the possession of the authorities with whom the original contract ha[d] been entered into.'" *Id.*, 15–0785, p. 10 (La. 5/3/16), 190 So.3d at 305 (citations omitted; emphasis supplied). Importantly, the Court then noted that "[t]he Act is not intended to—and does not—affect rights between parties proceeding directly in contract and is, in fact, silent on the question of parties that are in contract and, as here, file suit well before the notice of acceptance or default is filed." *Id.*, 15–0785, pp. 10–1, 190 So.3d at 305. The Court expressly held:

> Consistent with the stated purpose of the Act, we hold that the claimant's failure to file a sworn statement with the public authority did not affect the right of the subcontractor, in contractual privity with the general contractor, to proceed directly against the contractor and its surety.

*Id.*, 15–0785, p. 1, 190 So.3d at 299.

Importantly, the *Pierce* decision focused on the claim of a subcontractor to proceed against the surety bond; indeed, the *Pierce* Court specifically stated that it granted the writ application "to determine whether, under La. R.S. 38:2247, the notice and recordation requirements of La. R.S. 38:2242(B) are necessary conditions *for a claimant's right of action against a bond* furnished pursuant to La. R.S. 38:2241." (emphasis added). *Id.* The *Pierce* decision is consistent with our jurisprudence indicating that a surety bond "serves as an additional fund or security to assure that those who perform work on public projects receive payment for their work *in the event of a contractor's inability to fulfill its payment obligations.*" *Glencoe Educ. Found., Inc. v. Clerk of Court & Recorder of Mortgages for Par. of St. Mary*, 10–1872, p. 10 (La.App. 1 Cir. 5/6/11), 65 So.3d 225, 231 (emphasis added); *see also L & A Contracting Co. v. Ram Indus. Coatings, Inc.*, 99–0354, p. 23 (La.App. 1 Cir. 6/23/00), 762 So.2d 1223, 1236 ("labor and material payments bonds . . . guarantee that all bills for labor and materials contracted for and used by the contractor will be paid by the surety *if the contractor defaults*")(emphasis added); *Bossier Med. Properties v. Abbott & Williams Const. Co. of Louisiana*, 557 So.2d 1131, 1133 (La. App. 3 Cir. 2/28/90) (same).

The *Pierce* decision is likewise consistent with an earlier Supreme Court interpretation of La. R.S. 38:2247, in which the Court noted:

> The purpose of Section 2247, which expressly recognizes that "any person or claimant within the terms of this Part" has a "right of action on the contractor's bond", is to make clear that a claimant who is granted a privilege under the

Part against the governing authority is not deprived of his rights against the contractor's surety, even if the claimant loses his privilege (as by failing to record his sworn statement timely).

*Valliant v. State, Dep't of Transp. & Dev.*, 437 So.2d 845, 848 (La. 1983). The *Valliant* decision clearly acknowledges that a claimant may lose his privilege against the governing authority by failing to timely record his sworn statement, as did the *Pierce* Court which noted that "the failure to comply with the notice and recordation requirements of La. R.S. 38:2242" results in "the subcontractor los[ing] his privilege against funds in the hands of the public authority." *Pierce*, 15–0785, p. 8, 190 So.3d at 304. The Court then reiterated that, although the privilege may be lost against the public authority funds, "the failure to comply does not affect the right of the subcontractor, in contractual privity with the general contractor, to proceed directly against the contractor and its surety," as provided in La. R.S. 38:2247. *Id.* The *Pierce* Court likewise noted that La. R.S. 38:2247 "is first and foremost a prescriptive period, providing an additional year to parties filing suit *after* the acceptance of work or default notice is filed." *Id.*, p. 10, 190 So.3d at 305.

Accordingly, the *Pierce* Court analyzed the "unique circumstances"[5] of the case (in which the lawsuit was filed before the owner recorded notice of acceptance or before the notice of the contractor's default) and determined that the subcontractor does not lose his rights to proceed against a surety even if he had not previously perfected his privilege under La. R.S. 38:2242. The Court did not, however, touch upon the rights of a claimant to file a statement of claim in the mortgage records when, as is the case here, there has been no acceptance of the work by the public authority,

nor default by the general contractor. Under those circumstances, La. R.S. 38:2242 indicates that the subcontractor, in order to perfect his rights, "may after the maturity of his claim and within forty-five days after the recordation of acceptance of the work by the governing authority or of notice of default of the contractor or subcontractor, file a sworn statement of the amount due him with the governing authority. . . ."

There is no doubt that the *Pierce* Court recognizes the existence of an "event [which] triggers the 45–day period during which a claimant may file and record his sworn statement under La. R.S. 38:2242;" *Id.* 15–0785, p. 12, 190 So.3d at 307. That "event," as set forth in La. R.S. 38:2242, is either the "acceptance of the work by the governing authority or of notice of default of the contractor." The triggering event, therefore, is what allows a subcontractor to "file his statement of the amount due him with the governing authority having the work done and record it in the office of the recorder of mortgages for the parish in which the work is done" pursuant to La. R.S. 38:2242.

In *Gootee I*, Land Coast's rights against the surety bond were not at issue. The precise issue in *Gootee I*, as we stated therein, was "whether Land Coast met the requirements of La. R.S. 38:2242, or as Land Coast maintains, its claim was properly recorded insofar as the statute does not prohibit the filing of claims prior to the recordation of acceptance by the project's owner (in this case, the Orleans Parish Sheriff's Office) and allows such filings against a statutory payment bond." *Gootee I*, 15–0376, p. 7, 178 So.3d at 634. As we held in *Gootee I*, Land Coast's statement, recorded in the mortgage records before and not "within forty-five days after recor-

---

5. *Pierce*, 15–0785, p. 10, 190 So.3d at 305.

dation of acceptance of the work or notice of default of the contractor" as set forth in La. R.S. 38:2242, "was prematurely filed." *Id.* 15–0376, pp. 7–8, 178 So.3d at 634. We noted, however, that our "ruling in no way affects Land Coast's future ability to perfect a claim under the Act." *Id.*

To allow a subcontractor, such as Land Coast in this case, to record a statement of claim in the mortgage records at any time that a claim is unpaid would undermine the provisions of La. R.S. 38:2242 and the procedures set forth therein. And that procedure is clear and unambiguous—a claimant may record his statement of amounts due in the mortgage records "after maturity of his claim and within forty-five days after the recordation of acceptance of the work or notice of default of the contractor or subcontractor." Any other finding would eliminate the need for La. R.S. 38:2242 and its procedure for perfecting a lien. Nor do we believe that the *Pierce* decision indicates otherwise. To the contrary, the *Pierce* Court holding is limited to a subcontractor's rights to proceed directly against a |₈surety despite his failure to comply with notice and recordation as provided by La. R.S. 38:2242.

Thus, because we find that *Pierce* did not address the issue presented by the instant matter, and is distinguishable, we need not change our prior holding in *Gootee I.*

## CONCLUSION

For the foregoing reasons, we find that *Pierce* does not alter our previous decision in *Gootee I.* Accordingly, we re-affirm our original decision.

**AFFIRMED**