CHUTZ, J.
Plaintiff-appellant, Nu-Lite Wholesalers, L.L.C (Nu-Lite), appeals the trial court's judgment, sustaining a peremptory exception of no right of action filed by defendants-appellees, Brunt Construction, *12 Inc. (Brunt) and Mid-Continent Casualty Co. (MCC) and dismissing Nu-Lite's claims against them under the Louisiana Public Works Act (LPWA).[1] We reverse and remand.
FACTUAL AND PROCEDURAL BACKGROUND
On July 21, 2009, the St. Tammany School Board (STPSB) entered into a contract for additions and renovations to Abita Springs Elementary School, a public work located in St. Tammany Parish, for which Brunt served as the general contractor. MCC wrote Brunt's mandatory bond for the project. Brunt subsequently subcontracted electrical work with Axis Construction Group, L.L.P. (Axis). Nu-Lite furnished electrical supplies to Axis and, when Axis failed to pay for those electrical supplies, on September 30, 2010, Nu-Lite sent notice to STPSB, Brunt, and MCC, by certified mail, advising of its intent to file a sworn statement of claim or privilege. The letter included a copy of the statement, which stated that a balance of $144,603.05 was outstanding from Axis and that the affidavit was made to secure Nu-Lite's privilege under the LPWA. On October 1, 2010, Nu-Lite had its statement of claim or privilege recorded in the mortgage records of St. Tammany Parish.
Nu-Lite filed this lawsuit on May 11, 2011, averring entitlement to relief under the LPWA. Nu-Lite named Brunt, the general contractor, MCC, the surety, and Axis, the subcontractor with whom it had contracted, as defendants. On June 24, 2011, Brunt and MCC filed an answer, generally denying Nu-Lite's claims and asserting various defenses. They also asserted a claim against Axis and a reconventional demand against Nu-Lite.[2]
On May 22, 2012, MCC issued a bond to cover Nu-Lite's privilege claim, which was marked "CANCELED BY BOND" two days later, on May 24, by the St. Tammany Parish Clerk of Court's office. It is undisputed that on December 12, 2011, STPSB recorded a certificate of substantial completion, which constituted a notice of acceptance of work by the governing authority.
On October 13, 2016, Brunt and MCC filed a peremptory exception of no right of action, averring that because Nu-Lite had failed to comply with notice provisions under the LPWA, it had no right of action. Brunt and MCC contended they were entitled to have Nu-Lite's claims dismissed with prejudice.
A hearing was held on January 12, 2017, and on January 23, 2017, the trial court issued written reasons for judgment, finding *13 that Nu-Lite had failed to comply with the LPWA and, therefore, had no right of action to enforce its claim against Brunt and MCC. Thus, on February 15, 2017, the trial court signed a judgment in conformity with its ruling, sustaining the exception of no right of action, dismissing Nu-Lite's claims against Brunt and MCC with prejudice, and ordering the release of the MCC bond posted by Brunt.[3] On February 15, 2017, the trial court signed a judgment in conformity with its written ruling. Nu-Lite suspensively appeals.[4]
DISCUSSION
An action can only be brought by a person having a real and actual interest which he asserts. La. C.C.P. art. 681. The function of the exception urging no right of action is to determine whether the plaintiff belongs to the class of persons to whom the law grants the cause of action asserted in the suit. La. C.C.P. art. 927A(6). The focus in an exception of no right of action is on whether the particular plaintiff has a right to bring the suit; it assumes that the petition states a valid cause of action for some person and questions whether the plaintiff in the particular case is a member of the class that has a legal interest in the subject matter of the litigation. Jones v. Americas Ins. Co. , 2016-0904 (La. App. 1st Cir. 8/16/17), 226 So.3d 537, 540.
The exception does not raise the question of the plaintiff's ability to prevail on the merits or the question of whether the defendant may have a valid defense. Unlike the objection of no cause of action, evidence supporting or controverting an objection of no right of action is admissible on the trial of the exception for the purpose of showing that the plaintiff does not possess the right he claims or that the right does not exist. See La. C.C.P. art 931.[5] The party raising a peremptory exception bears the burden of proof. To prevail on a peremptory exception pleading the objection of no right of action, the defendant must show that the plaintiff does not have an interest in the subject matter of the suit or legal capacity to proceed with the suit. Jones , 226 So.3d at 540-41.
*14 Whether a plaintiff has a right of action is a question of law and is therefore reviewed de novo on appeal. Appellate review of questions of law is simply to determine whether the trial court was legally correct. On legal issues, an appellate court gives no special weight to the findings of the trial court but, instead, exercises its constitutional duty to review questions of law and render a judgment on the record.[6] Id.
Discussing the LPWA, in Pierce Foundations, Inc. v. Jaroy Constr., Inc. , 2015-0785 (La. 5/3/16), 190 So.3d 298, 301, the Louisiana Supreme Court noted that in 1918, the legislature enacted Act 224, the precursor to the modem LPWA, to "protect those performing labor and furnishing materials for public works." The Court further explained that the LPWA laws do not grant beneficiaries a lien on the public work itself, but rather gives them "a privilege against the unexpended fund in the possession of the public entity with whom the original contract was entered into." Id. (citing Wilkin v. Dev Con Builders, Inc. , 561 So.2d 66, 70 (La. 1990)and quoting Pigeon-Thomas Iron Co. v. Drew Bros ., 162 La. 836, 111 So. 182, 183 (1926) ).
Under the LPWA, when a public entity enters into a contract in excess of $25,000.00 for the construction, alteration, or repair of any public works, the contractor is required to post a bond in a sum of not less than fifty percent of the contract price for the payment by the contractor or subcontractor to claimants as defined in La. R.S. 38:2242. La. R.S. 38:2241A(2); Pierce Foundations, Inc. , 190 So.3d at 301.
Any person to whom money is due pursuant to a contract with the owner or a contractor or subcontractor for furnishing materials or supplies for the construction, alteration, or repair of any public work is a claimant. La. R.S. 38:2242A. As the Pierce court pointed out, 190 So.3d at 301-302, one means for asserting a claim under the LPWA is set forth in La. R.S. 38:2242B, which provides:
Any claimant may after the maturity of his claim and within forty-five days after the recordation of acceptance of the work by the governing authority or of notice of default of the contractor or subcontractor, file a sworn statement of the amount due him with the governing authority having the work done and record it in the office of the recorder of mortgages for the parish in which the work is done.
La. R.S. 38:2247, also addresses notice, stating:
Nothing in this Part shall be construed to deprive any claimant, as defined in this Part and who has complied with the notice and recordation requirements of R.S. 38:2242(B), of his right of action on the bond furnished pursuant to this Part, provided that said action must be brought against the surety or the contractor or both within one year from the registry of acceptance of the work or of notice of default of the contractor;
*15 except that before any claimant having a direct contractual relationship with a subcontractor but no contractual relationship with the contractor shall have a right of action against the contractor or the surety on the bond furnished by the contractor, he shall in addition to the notice and recordation required in R.S. 38:2242(B) give written notice to said contractor within forty-five days from the recordation of the notice of acceptance by the owner of the work or notice by the owner of default, stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor or service was done or performed. Such notice shall be served by mailing the same by registered or certified mail, postage prepaid, in an envelope addressed to the contractor at any place he maintains an office in the state of Louisiana.
The Pierce court explained that the plain language of La. R.S. 38:2242B and La. R.S. 38:2247 conflict, because La. R.S. 38:2242B provides that a claimant "may" file a sworn statement, but La. R.S. 38:2247 refers to the recordation "requirements" of La. R.S. 38:2242B. Because of this ambiguity, the Court pursued statutory meaning in the context of the statute as a whole, with particular focus on the statute's purpose, and concluded that it was a fundamental error to render the permissive "may" in La. R.S. 38:2242(B) -"[a]ny claimant may ... file a sworn statement"-mandatory in La. R.S. 38:2247. Pierce , 190 So.3d at 304. Therefore, the Court determined that an interpretation of La. R.S. 38:2247 that essentially trumps the permissive language in La. R.S. 38:2242B overlooks that La. R.S. 38:2247 is first and foremost a prescription provision, providing an additional year to parties filing suit after the acceptance of work or default notice is filed. Id. , 190 So.3d at 305.
In this case, the trial court concluded that because Nu-Lite, who it is undisputed was a claimant under La. R.S. 38:2242A, recorded its claim on October 1, 2010, well before the December 12, 2011 date of STPSB's notice of acceptance of the work, Nu-Lite's claim was not filed within forty-five days of that notice of acceptance and, thus, was untimely filed and recorded under La. R.S. 38:2242B. Citing Gootee Constr., Inc. v. Atkins, 2015-0376 (La. App. 4th Cir. 11/4/15), 178 So.3d 629, the trial court determined that Nu-Lite had no right of action to enforce its claims against Brunt and MCC and dismissed its claims with prejudice.
The issue before the Gootee court was whether a subcontractor was entitled to mandamus relief seeking cancellation of an allegedly improperly recorded claim under the LPWA. A sub-subcontractor claimant had filed and recorded its statement of claim, and the subcontractor contended that the sub-subcontractor was not entitled to payment until the subcontractor had been paid by the general contractor. See Gootee Constr., Inc. , 178 So.3d at 631. The Gootee court concluded that because the governing authority had not yet recorded its notice of acceptance, the sub-subcontractor's statement of claim was premature. In so determining, however, the Gootee court held that the ruling in no way affected the sub-subcontractor's future ability to perfect a claim under the LPWA. Thus, the subcontractor was afforded the mandamus relief it sought. Gootee Constr., Inc. , 178 So.3d at 634.
On a writ application by the sub-subcontractor, the Louisiana Supreme Court remanded the matter for reconsideration in light of Pierce, 190 So.3d 298. Ruling on the remand, the Fourth Circuit again determined that the sub-subcontractor's statement of claim was prematurely filed *16 and recorded under La. R.S. 38:2242B and reaffirmed its earlier determination. See Gootee Constr., Inc. v. Atkins , 2015-0376 (La. App. 4th Cir. 12/21/16), 207 So.3d 485, 487, writ denied, 2017-0138 (La. 3/31/17), 217 So.3d 360 ( Gootee II ). The Gootee II court reasoned that Pierce had focused on the issue of whether, under La. R.S. 38:2247, the notice and recordation requirements of La. R.S. 38:2242B were necessary conditions for a claimant's right of action against a bond furnished pursuant to La. R.S. 38:2241. Gootee II , 207 So.3d at 488. Because the Pierce court had not focused on the rights of a claimant to file a statement of claim in the mortgage records when there had been no acceptance of the work by the public authority, the Fourth Circuit concluded that Pierce did not alter its earlier decision. Gootee II, 207 So.3d at 489-90.
We find the trial court's reliance on Gootee misplaced. In Gootee, the subcontractor instituted its suit prior to the governing authority's acceptance of work, and the cancellation of the sub-contractor's claim in the public records was expressly recognized to have been without prejudice since the "ruling in no way affect[ed] [the sub-subcontractor's] future ability to perfect a claim under the [LPWA]." Gootee, 178 So.3d at 634. Here, by the time that Brunt and MCC asserted the exception of no right of action, STPSB had already filed its acceptance of work. Importantly, unlike the subcontractor in Gootee seeking to have a sub-subcontractor's prematurely filed and recorded claim cancelled, in this lawsuit, which was instituted by Nu-Lite to enforce its claim, Brunt and MCC answered the petition without raising the issue of prematurity. Instead, six years after having first been apprised of the claim, over five years after the commencement of litigation, and nearly five years after the acceptance of work by the governing authority, Brunt and MCC urged for the first time that Nu-Lite's premature filing and recording of the statement of claim was deficient as a matter of law, thereby failing to set forth a right of action and warranting the dismissal of Nu-Lite's claims against them with prejudice. We disagree.
Nu-Lite complied with La. R.S. 38:2242B by filing and recording its statement of claim or privilege in the St. Tammany mortgage records on October 1, 2010, after it sent notice of Axis' nonpayment to STPSB, Brunt, and MCC on September 30, 2010, which included a copy of the statement of claim or privilege. Although the statement was filed and notice was sent prior to STPSB's notice of acceptance, we do not find this detrimental to Nu-Lite's claim. La. R.S. 38:2242B only contemplates a situation in which the notice of acceptance is filed prior to the lien having been filed. See Pierce, 190 So.3d at 307, agreeing with " K" Constr., Inc. v. Burko Constr., Inc. , 629 So.2d 1370, 1374 (La. App. 4th Cir.1993), writ denied, 94-0149 (La. 3/11/94), 634 So.2d 391 ("Simply put, the Public Works Act does not appear to envision a situation where suit is filed before the notice of default [or acceptance of the work by the governing authority] is recorded"). Consequently, our task is to determine if what Nu-Lite did in this case was sufficient to notify Brunt and MCC of its claims. See " K" Constr., Inc. , 629 So.2d at 1374.
Nu-Lite sent a certified letter apprising Brunt and MCC of its intent to file the statement of claim or privilege with a copy of the statement. Nu-Lite then recorded the statement in the mortgage records, and the claim was subsequently canceled by MCC's bond. Additionally, Nu-Lite instituted this lawsuit to enforce its *17 claim, and Brunt and MCC filed an answer and an amended answer before STPSB's acceptance of work without having raised the issue of the timing of Nu-Lite's filing and recordation of the statement of claim or privilege. Therefore, we conclude that because Brunt and MCC were sufficiently notified of the claim, the requirements of La. R.S. 38:2242B were satisfied. See " K" Constr., Inc., 629 So.2d at 1374 ; see also Gilchrist Const. Co., Inc. v. Terral Riverservice, Inc., 2001-1617 (La. App. 3d Cir. 5/1/02), 819 So.2d 362, 366, writ denied sub nom., Gilchrist Constr. Co., Inc. v. Terral River Serv., Inc., 2002-2121 (La. 11/8/02), 828 So.2d 1119 (where a supplier of material to a subcontractor filed the statement of amount due prior to the acceptance of the work by the Department of Transportation and Development (DOTD), notice to the general contractor was sufficient to comply with mandatorily required filing of a statement of the amount due in the mortgage records under La. R.S. 48:256.5B).[7] We note that this interpretation best comports with the purpose of the LPWA which is to protect those performing labor and furnishing materials for public works rather than protecting sureties on the bond. See Pierce , 190 So.3d at 305 (citing Wilkin, 561 So.2d at 70 ).
Although Nu-Lite has a direct contractual relationship with Axis, it has no contractual relationship with Brunt or MCC. Thus, under La. R.S. 38:2247, Nu-Lite was required to give written notice to Brunt by certified mail within forty-five days of STPSB's recordation of notice of acceptance, i.e., December 12, 2011, of the amount claimed and the name of the party to whom the material was furnished.
The certified mail requirement of La. R.S. 38:2247 is to "assure actual receipt of written notice of the claim and to facilitate proof thereof." If a party denies having received written notice of the claim, then the burden is on the claimant to prove that notice was received. Bob McGaughey Lumber Sales, Inc. v. Lemoine Co., Inc., 590 So.2d 664, 666 (La. App. 3d Cir. 1991).
The record shows that the owner and CEO of Brunt, N. Hunt Ragusa, acknowledged in his September 30, 2016 affidavit that Nu-Lite notified both STPSB and Brunt of Axis' nonpayment in the September 30, 2010 correspondence, and that Nu-Lite recorded its statement of claim or privilege on October 1, 2010. Moreover, on June 24, 2011, well before STPSB's December 12, 2012 acceptance of work, Brunt and MCC answered Nu-Lite's May 11, 2011 petition, which set forth the outstanding balance due it from Axis. And Brunt and MCC twice amended their pleadings prior to STPSB's acceptance of work. The record clearly establishes that Brunt and MCC had actual notice of Nu-Lite's claim, the amount claimed, stated with substantial accuracy, and the name of the party to whom the material was furnished. Thus, they had actual notice of the claim within forty-five days of STPSB's notice of acceptance, and Nu-Lite satisfied the requirements of La. R.S. 38:2247. See *18 Bob McGaughey Lumber Sales, Inc. , 590 So.2d at 667 ; see also Gilchrist Constr. Co., Inc. , 819 So.2d at 366 (finding that a supplier of material sustained its burden of proof with evidence of the subcontractor's actual notice of the claim as required under La. R.S. 48:256.12 ).[8]
Because the record establishes that the notice provisions of both La. R.S. 38:2242B and 2247 were satisfied, the trial court erred in concluding that Nu-Lite did not have a right of action against Brunt and MCC under the LPWA. Accordingly, we reverse the trial court's action of sustaining the exception of no right of action and the order releasing the MCC bond posted by Brunt.
DECREE
For these reasons, the trial court's judgment sustaining the peremptory exception of no right of action and its order releasing the MCC bond posted by Brunt is reversed. The matter is remanded for further proceedings.[9] Appeal costs are assessed against defendants-appellees, Brunt Construction, Inc. and Mid-Continent Casualty Co.
REVERSED AND REMANDED.

See generally La. R.S. 38:2241. et seq.

In their first supplemental answer, filed on September 14, 2011, Brunt and MCC redesignated as a cross claim against Axis a claim they had incorrectly designated as a third-party demand in their original answer. In the November 30, 2012 supplemental and amended pleadings, Brunt and MCC also added additional defenses against Nu-Lite and asserted a reconventional demand against Nu-Lite as well as third-party demands against Axis owner, Charles Bandi, and various Nu-Lite owners, directors, and employees in their individual capacities. According to the allegations by Brunt and MCC, the individual Nu-Lite representatives were liable for fraudulent and/or ultra vires acts because they had "repeatedly recommended [that] Axis be awarded [the] subcontract" even though they had actual knowledge of Bandi's pending voluntary petition for Chapter 7 Bankruptcy and a personal business debt of $58,294.45 that Bandi owed to Nu-Lite. On November 17, 2015, the trial court signed an order voluntarily dismissing MCC's claims against the Nu-Lite representatives without prejudice. Additionally, Brunt and MCC filed a third supplemental answer on July 20, 2015, in which they raised seven more defenses against Nu-Lite.

Along with the exception of no right of action Brunt and MCC filed combined motions for partial summary judgment, maintaining that Nu-Lite had failed to preserve its privilege under the LPWA; and for a mandamus, seeking an order directed at the recorder of mortgages to cancel the statement of claim or privilege and to release the MCC bond since Nu-Lite had refused to have the statement of claim or privilege extinguished. Because the trial court had sustained the exception of no right of action, it determined that the motions were moot.

On December 19, 2016, the trial court signed an order allowing Brunt and MCC to substitute their memorandum in support of their combined motions for partial summary judgment and mandamus relief and the exception of no right of action. In the motion to substitute, Brunt and MCC represented that overlooked documents had eliminated one basis for their claims for requested relief. Specifically, they removed their claim that Nu-Lite had failed to afford timely notice to Brunt and STPSB as required by La. R.S. 38:2242F. Despite the removal of these grounds, in its reasons for judgment, the trial court apparently inadvertently referenced Brunt and Nu-Lite's earlier memorandum and concluded that because Nu-Lite had failed to provide the requisite notice under La. R.S. 38:2242F, it failed to preserve its right to file a privilege for any material delivered before July 1, 2010. On appeal, Brunt and MCC agree that this was an incorrect basis to sustain the exception of no right of action and, therefore, the propriety of that ruling is not within the scope of our review.

La. C.C.P. art. 931 provides in pertinent part, "On the trial of the peremptory exception pleaded at or prior to the trial of the case, evidence may be introduced to support or controvert any of the objections pleaded, when the grounds thereof do not appear from the petition."

Given our de novo standard of review and mindful that the trial court pretermitted a determination of the motion for partial summary judgment, see La. C.C.P. art. 966F (limiting appellate review to those issues set forth in the motion under consideration by the court at that time), we find no merit in the assertion by Brunt and MCC that Nu-Lite is precluded on appeal from offering an argument it did not raise in its opposition memorandum at the trial court to support its right of action especially where, as here, it is challenging the basis for the trial court's dismissal of its claims. Brunt and MCC's reliance on La. U.R.C.A. Rule 1-3, providing that courts of appeal will review only issues which were submitted to the trial court, is inapposite since the issue of whether Nu-Lite had a right of action was clearly before the trial court.

La. R.S. 48:256.5B provides:
Any claimant shall, after the maturity of his claim and within forty-five days after the recordation of final acceptance of the work by the department or of notice of default of the contractor or subcontractor, record the original sworn statement of the amount due him in the office of the recorder of mortgages for the parish in which the work is done and file a certified copy of the recorded sworn statement of the amount due, showing the recordation data, with the undersecretary of the department.

La. R.S. 48:256.12 states:
Nothing in this Part shall be construed to deprive any claimant, as defined in this Part and who has complied with the notice and recordation requirements of R.S. 48:256.5(B), of his right of action on the bond furnished pursuant to this Part, provided that said action must be brought against the surety or the contractor or both within one year from the registry of acceptance of the work or of notice of default of the contractor; except that before any claimant having a direct contractual relationship with a subcontractor but no contractual relationship with the contractor shall have a right of action against the contractor or the surety on the bond furnished by the contractor, he shall in addition to the notice and recordation required in R.S. 48:256.5(B) give written notice to said contractor and surety within forty-five days from the recordation of the notice of final acceptance by the department of the work or notice by the department of default, stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor or service was done or performed. Such notice shall be served by mailing the same by registered or certified mail, postage prepaid, in envelopes addressed separately to the contractor and surety at any place each maintains an office in the state of Louisiana.

Since we have reversed the trial court's action of sustaining the exception of no right of action, we find moot the issue of whether the trial court should have allowed Nu-Lite to amend its petition to state a right of action and pretermit a discussion of whether Brunt and MCC waived their right to object to the prematurity of Nu-Lite's petition by failing to file a dilatory exception.