# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 18-30170

84 LUMBER COMPANY,

Plaintiff - Appellant

United States Court of Appeals
Fifth Circuit

**FILED**

January 24, 2019

Lyle W. Cayce
Clerk

v.

CONTINENTAL CASUALTY COMPANY; SAFECO INSURANCE
COMPANY OF AMERICA; FIDELITY & DEPOSIT COMPANY OF
MARYLAND; F.H. PASCHEN, S.N. NIELSEN & ASSOCIATES, L.L.C.,

Defendants - Appellees

Appeal from the United States District Court
for the Eastern District of Louisiana

Before WIENER, SOUTHWICK, and COSTA, Circuit Judges.

WIENER, Circuit Judge:

Defendant-Appellee F.H. Paschen, S.N. Nielsen & Associates ("Paschen") was the general contractor on two contracts to build public schools in Louisiana. Paschen subcontracted a portion of those projects to J & A Construction Management Resources Company ("J & A"), which then sub-subcontracted a portion of its work to Plaintiff-Appellant 84 Lumber Company. 84 Lumber filed two sworn statements of claim under the Louisiana Public Works Act ("LPWA"), LA. REV. STAT. § 38.2242, alleging that Paschen and J & A failed to pay for its work on those projects. 84 Lumber did not, however, comply with the LPWA's requirement that a subcontractor not in privity with

No. 18-30170

a general contractor must send written notice of its claim by certified or registered mail to the general contractor's Louisiana office.[1] Instead of using certified mail, 84 Lumber sent its notice by email. And instead of sending the notice to Paschen's Louisiana office, 84 Lumber sent it to Paschen's lawyer.

The district court held that 84 Lumber's notice did not comply with the LPWA's notice requirements in LA. REV. STAT. § 38:2247 ("§ 2247"). The district court also concluded that the evidence established only that the notice was *sent* but did not establish that it was *received*. We agree that the notice was insufficient and affirm.

## I.

We must first consider whether we have appellate jurisdiction.[2] 84 Lumber appeals from a grant of partial summary judgment and a Rule 12(c) judgment on the pleadings, both in favor of Paschen. Although no claims are pending in the district court, Paschen, a defendant and third-party plaintiff, voluntarily dismissed its third-party claim against J & A, the third-party defendant, but did so without prejudice. The district court subsequently entered a judgment that disposed of all the pending claims, but expressly dismissed Paschen's third-party claim against J & A without prejudice. In a subsequent order denying 84 Lumber's motion to amend or alter the judgment, the court referred to the judgment as a "final judgment." However, Paschen's third-party claim against J & A was not finally adjudicated because it had been dismissed voluntarily without prejudice.

---

[1] LA. REV. STAT. § 38:2247.

[2] *Castaneda v. Falcon*, 166 F.3d 799, 801 (5th Cir. 1999) ("We must always be sure of our appellate jurisdiction and, if there is a doubt, we must address it, *sua sponte* if necessary.").

2

No. 18-30170

This court has jurisdiction over appeals from "final decisions of the district courts."[3] Under the *Ryan* rule,[4] "[a] voluntary dismissal of a case without prejudice is not a final appealable decision."[5] We have previously summarized the basis for this rule and its "typical" operation:

> [A] party cannot use voluntary dismissal *without prejudice* as an end-run around the final judgment rule to convert an otherwise non-final—and thus non-appealable—ruling into a final decision appealable under § 1291.
>
> Typically, the *Ryan* rule operates when a plaintiff has filed multiple claims against a single party, or against multiple parties, and the district court has dismissed some but not all of the claims. Then, in an effort to preserve his remaining claims while simultaneously appealing the adverse dismissal, the plaintiff implores the district court to dismiss his remaining claims *without prejudice* and enter a final judgment. *Ryan* eschews this practice of manufacturing § 1291 appellate jurisdiction and disallows the manipulative plaintiff from having his cake (the ability to refile the claims voluntarily dismissed) and eating it too (getting an early appellate bite at reversing the claims dismissed involuntarily). This prohibition of quasi-interlocutory appeals applies equally to a plaintiff's attempt to use a Rule 41(a) voluntary dismissal to construct the jurisdictional basis for appealing a district court's denial of a motion for remand.[6]

We have not, however, addressed the instant situation in which the only claim standing in the way of complete finality is a voluntarily dismissed third-party claim.

---

[3] 28 U.S.C. § 1291.

[4] This rule comes from *Ryan v. Occidental Petroleum Corp.*, 577 F.2d 298 (5th Cir. 1978).

[5] *Griggs v. S.G.E. Mgmt. L.L.C.*, 905 F.3d 835, 840 (5th Cir. 2018).

[6] *Marshall v. Kansas City S. Ry. Co.*, 378 F.3d 495, 500 (5th Cir. 2004) (per curiam) (citations omitted).

3

No. 18-30170

In the only case we have found that addresses this issue, the Eleventh Circuit held that the *Ryan* rule does not apply to third-party claims.[7] That court reasoned that *Ryan*'s concern about manufactured jurisdiction is not present for third-party claims. "Because the [plaintiff] appellant did not participate in the voluntary dismissal of the remaining claims, there was no collusion between it and the parties dismissing the remaining claim."[8] The court concluded that "[t]he voluntary dismissal, with or without prejudice, of a defendant's remaining third-party claim in an otherwise terminated lawsuit does not bar the plaintiff's right to appeal a judgment against it."[9]

The same is true here. The purpose of the *Ryan* rule is to prevent the appealing party from manufacturing jurisdiction by using an "end-run around the final judgment rule to convert an otherwise non-final—and thus non-appealable—ruling into a final decision appealable under § 1291."[10] But the plaintiff, 84 Lumber, did not participate in Paschen's dismissal of its remaining third-party claim against J & A, so it did not manufacture appellate jurisdiction. We agree with the Eleventh Circuit that the *Ryan* rule does not apply to a voluntarily dismissed third-party claim.

We have jurisdiction.

## II.

We next consider whether, under Louisiana law, notice of a claim furnished by email to a party's lawyer is sufficient to meet the LPWA's notice requirement. We hold that it does not.

---

[7] *CSX Transportation, Inc. v. City of Garden City*, 235 F.3d 1325, 1328–29 (11th Cir. 2000).

[8] *Id.* at 1329.

[9] *Id.*; *see also* 15A WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 3914.9 (2d ed. Supp. 2018) (describing *CSX* as appropriately "circumventing the occasional excesses that result from the theory that a dismissal without prejudice does not establish finality").

[10] *Marshall*, 378 F.3d at 495.

No. 18-30170

When "our subject matter jurisdiction is based on diversity," we "apply the substantive law of the forum state—here, Louisiana."[11] "To determine the forum state's law, we look first to the final decisions of that state's highest court—here, the Louisiana Supreme Court. In the absence of a determinative decision by that court on the issue of law before us, we must determine, in our best judgment, how we believe that court would resolve the issue."[12] "Under Louisiana's Civil Code, the only authoritative sources of law are legislation and custom."[13] "Unlike in common law systems, '[s]tare decisis is foreign to the Civil Law, including Louisiana.'"[14] We are, however, "'guided by decisions rendered by the Louisiana appellate courts, particularly when numerous decisions are in accord on a given issue'—i.e., *jurisprudence constante*—'but we are not strictly bound by them.'"[15]

In Louisiana, legislation "is the solemn expression of the legislative will; thus, the interpretation of legislation is primarily the search for the legislative intent."[16] "When a law is clear and unambiguous, and its application does not lead to absurd consequences, it shall be applied as written, with no further interpretation made in search of the legislative intent."[17]

The purpose of the LPWA "is to 'protect those performing labor and furnishing materials for public works' rather than protecting the sureties on the bond."[18] The provisions of the Act "must be strictly construed."[19]

---

[11] *Boyett v. Redland Ins. Co.*, 741 F.3d 604, 607 (5th Cir. 2014) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938) and *Holt v. State Farm Fire & Cas. Co.*, 627 F.3d 188 (5th Cir. 2010)).

[12] *Id.* (citations omitted).

[13] *Id.* (quoting *Amer. Int'l Specialty Lines Ins. Co. v. Canal Indem. Co.*, 352 F.3d 254, 260 (5th Cir. 2003)).

[14] *Id.* (citation omitted).

[15] *Id.* at 607–08 (citations omitted).

[16] *Pierce Founds., Inc. v. Jaroy Const. Inc.*, 190 So. 3d 298, 303 (La. 2016).

[17] *Id.* (citing La. Rev. Stat. Ann. § 1:4).

[18] *Id.* at 305 (quoting *Wilkin v. Dev Con Builders, Inc.*, 561 So. 2d 66, 70 (La. 1990))

[19] *Id.* at 303.

No. 18-30170

Claimants owed money for public works projects have two options for relief under the LPWA. A claimant may either (a) file an action against the general contractor and the sureties on the project's statutory bond, or (b) seek "the unexpended fund[s] in the possession of the public entity with whom the original contract was entered into" by filing an action against the public authority.[20] 84 Lumber took the first option, proceeding against the project's statutory bond. Section 2247, which governs the notice requirements for actions against a project's statutory bond, requires a subcontractor to give notice before it has a right of action on the bond:

> [B]efore any claimant having a direct contractual relationship with a subcontractor but no contractual relationship with the contractor shall have a right of action against the contractor or the surety on the bond furnished by the contractor, he shall . . . give written notice to said contractor within forty-five days from the recordation of the notice of acceptance by the owner of the work or notice of the owner of the default, stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor or service was done or performed. Such notice shall be served by mailing the same by registered or certified mail, postage prepaid, in an envelope addressed to the contractor at any place he maintains an office in the state of Louisiana.[21]

84 Lumber had a contractual relationship with a subcontractor, J & A, but did not have one with the general contractor, Paschen. 84 Lumber therefore had to comply with § 2247's requirements that the notice of claim be (1) served by registered or certified mail (2) addressed to Paschen's Louisiana office.

The parties do not dispute that 84 Lumber did not send notice of its sworn statements of claim by registered or certified mail to Paschen's Louisiana office. 84 Lumber did neither. In an affidavit from its outside

---

[20] *Id.* at 301 (quoting *Wilkin*, 561 So. 2d at 70).
[21] LA. REV. STAT. § 38.2247.

counsel's legal secretary she stated that she personally (1) emailed copies of the sworn statements of claim (2) to Paschen's outside counsel. In the face of this, 84 Lumber contends that Paschen's receipt of actual notice satisfied § 2247's notice requirements.[22]

We conclude in our *Erie* guess that the plain language of § 2247 forecloses 84 Lumber's contention. Section 2247 prescribes a specific, two-prong method by which notice must be given: (1) by registered or certified mail (2) to the general contractor's Louisiana office. It says nothing about actual notice, much less email to the general contractor's lawyer. Because the LPWA "must be strictly construed," and the notice requirements are "clear and unambiguous" and do not lead to absurd consequences, we must apply § 2247 as written.[23]

Even if this straightforward statutory interpretation did not control, there is no Louisiana Supreme Court decision or *jurisprudence constante* to guide us. As the district court observed, no Louisiana appellate court has held that actual notice alone satisfies § 2247's requirements. Rather, the Louisiana appellate decisions point in different directions.

Three cases point in 84 Lumber's favor. In *Bob McGaughey Lumber Sales, Inc. v. Lemoine Co., Inc.*, a sub-subcontractor sent notice of its claim to

---

[22] At the district court and on appeal, Paschen did not concede that it had actual notice of the claim. The purported emails to its counsel are not in the record, and there is no record evidence showing that Paschen's counsel received the emails. The district court explained that "[the legal secretary's] affidavit establishes that she *sent* the email and its attachment, but there is no evidence indicating that [Paschen's counsel] *received* it, or that he brought it to Paschen." Like the district court, we find it "curious" that these emails are not in the record. Perhaps the Louisiana legislature's directive to use registered or certified mail—which, unlike email, confirms receipt—was a conscientious attempt to avoid disputes like these. *See Bob McGaughey Lumber Sales, Inc. v. Lemoine Co., Inc.*, 590 So. 2d 664, 665 (La. App. 3d Cir. 1991) ("[O]ne of the purposes of the certified mailing requirement is proof."). Instead of resolving the dispute about whether Paschen had actual notice, we assume, arguendo, that it did and proceed to determine the legal issue.

[23] *Pierce Founds.*, 190 So. 3d at 303.

the general contractor by regular mail instead of registered or certified mail.[24] The court held that § 2247's notice requirements were satisfied "upon proof that written notice . . . is actually served on the contractor within the statutory delay and, if by mail, the service thereof is not rendered ineffective because the notice is not by certified or registered mail."[25]

Similarly, in *K Construction, Inc. v. Burko Construction, Inc.*, a sub-subcontractor had made no effort to send the contractor written notice.[26] The court reasoned that its task was "to determine if what the claimants did in this case was sufficient to notify" the contractor, and held that the sub-subcontractor could maintain its claim because its claim was included in the subcontractor's claim, "of which [the contractor] was notified."[27]

Most recently, in *Nu-Lite Electric Wholesalers, LLC v. Axis Construction Group, LLC*, the court held that sending written notice, then suing, before notice of acceptance or default did not undermine the claim.[28] It reasoned that because the suit was ongoing when the public owner issued its notice of acceptance, and the claimant had sent certified letters to the contractor notifying it of its claims before it filed suit, the contractor had "actual notice of the claim within forty-five days of [the] notice of acceptance."[29] The actual notice was sufficient even though the written notice was sent much earlier.

Pointing the other way, in *Interstate School Supply Co. v. Guitreau's Construction & Consulting Co., Inc.*, a state court of appeal held that a subcontractor could not maintain a cause of action because it sent its notice

---

[24] 590 So. 2d 664, 666 (La. App. 3d Cir. 1991) ("Receipt, however, is not at issue in the case *sub judice*. The record contains a copy of the letters which show the date of receipt of both letters. Further defendants admit timely receipt of McGaughey's written notice . . . .").

[25] *Id.* at 667.

[26] 629 So. 2d 1370, 1374 (La. App. 4th Cir. 1993).

[27] *Id.*

[28] 249 So. 2d 10, 17 (La. App. 1st Cir. 2018).

[29] *Id.*

one day late.[30] The court explained that the "specific language" of § 2247 "requires compliance with the notice requirements in order to proceed 'on the bond'" and that "clear language cannot be ignored."[31] Although this decision addressed the timeliness of the notice rather than its sufficiency,[32] it nonetheless points toward a strict interpretation of the statute's requirements.

No Louisiana court has held that an email to the contractor's counsel is sufficient to satisfy § 2247's requirements. In all the foregoing cases, the claimants came substantially closer to complying with § 2247 than did 84 Lumber. In those cases, unlike this one, the contractor's actual notice of the claim was undisputed: In *Bob McGaughey*, the claimant sent written notice by regular mail rather than certified mail; in *Burko*, one claimant sent the required statement of claim to the public owner, but it was deficient because it was unsworn, and the other claimant's claim was included within the first claimant's; and in *Nu-Lite*, the claimant followed § 2247's notice requirements, but did so too early.

Considering the clear text of the statute, the conflicting Louisiana appellate decisions, and that in Louisiana, "[j]urisprudence, even when it rises to the level of *jurisprudence constante*, is a secondary law source,"[33] we hold that neither sending notice by email nor sending it to a general contractor's lawyer satisfies § 2247's unambiguous requirements that (1) notice be sent by registered or certified mail (2) to the general contractor at any place in Louisiana that it maintains an office.

---

[30] 542 So. 2d 138, 139 (La. App. 1st Cir. 1989).

[31] *Id.*

[32] *Burko*, 629 So. 2d at 1373.

[33] *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007) (citation omitted); *see also* Alvin B. Rubin, *Hazards of a Civilian Venturer in Federal Court: Travel and Travail on the* Erie Railroad, 48 LA. L. REV. 1369 (1988).

No. 18-30170

## III.

84 Lumber also contends that its claims on the statutory bond are "separate and distinct" from its claims on the release bonds executed by Paschen. The district court dismissed the release-bond claims, concluding that they were derivative of 84 Lumber's statutory-bond claims. We agree. 84 Lumber was not in privity with Paschen, and the LPWA does not create a claim on release bonds for subcontractors not in privity with the general contractor, other than § 2247.[34] As we have explained, 84 Lumber did not satisfy § 2247's clear and unambiguous notice requirements. It therefore has no right of action under the LPWA and may not recover on the release bonds related to those claims.

## IV.

We AFFIRM the district court's judgment.

---

[34] *See Wilkin*, 561 So. 2d at 71 ("The effect of [the LPWA] is to give certain classes of persons not enjoying privity of contract with the general contractor or with the governing authority a claim nevertheless against the general contractor and his surety and in some instances a claim against the governing authority itself.").